19680

The STATE, Respondent, v. Larry Dean BATSON, Appellant.

(198 S. E. (2d) 517)

*J. Reuben Long, Esq.*, of Conway, *for Appellant,* cites:

*J. M. Long, Jr., Esq., Sol.*, of Conway, *for Respondent,* cites:

August 16, 1973.

BUSSEY, Justice:

During the early morning hours of June 10, 1972, the appellant Batson, aged 19, and one Danny McCrae, aged 16, were arrested at North Myrtle Beach, South Carolina, on a charge of selling twenty-five tabs of LSD to an undercover SLED agent by the name of Donnie Gilreath. McCrae admitted his guilt and his case was disposed of in the Juvenile Court of Horry County. Batson denied his guilt but was convicted at the October term of the General Sessions Court for Horry County and sentenced to a term of seven years.

While there were other witnesses who had knowledge of the events leading up to and attendant upon the alleged sale, upon the trial only Gilreath, McCrae and Batson testified as to such events. The stated facts are gleaned in part from the evidence adduced on behalf of the State and in part from that offered by the defense. McCrae testified for the appellant Batson; assumed full responsibility and exonerated Batson of any complicity in the crime.

Batson and McCrae were both from Rockingham, North Carolina, but McCrae had been living at the beach several months, and according to the defense, Batson arrived there only the afternoon before. Both were staying at a house on the beach occupied by an acquaintance of theirs who was a relative of the owner. At some time near midnight, at a place on the beach called the Spanish Galleon, both boys were approached by two strange girls who unknown to the boys, were informers or undercover agents for SLED. One

of these girls is identified in the record only by the name of Brenda, while the other is referred to by the names of Peggy and Linda.

Each of the girls paired off with one of the boys and each sought to purchase narcotics from her companion. McCrae admittedly finally told his companion he had some narcotics hidden in a tree some distance away which he would sell, McCrae contending, however, that the substance he had was mescaline, or at least believed by him to be mescaline, rather than LSD as shown by the State's proof. As a result of the contact made by the girls, one of them called Gilreath on the telephone and he shortly thereafter arrived in an automobile accompanied by another male SLED agent, as yet unidentified. Additionally, according to the defense, an unidentified blond girl was in the Gilreath automobile, but her existence was 'denied by Gilreath. In any event, both boys, Brenda and Peggy-Linda joined the occupants of the Gilreath car which was driven some distance to a point where McCrae alighted, went to the tree, picked up a plastic bag and then got back in the car. The car was then driven to the house where the two boys were staying, at which place there was some counting of money and narcotics tablets, but no sale finally concluded. According to Gilreath, he wanted to give the female informers a chance to depart the scene before any arrest was made and made excuses for not promptly concluding the sale. As a result, all parties returned to the car which was driven to a motel where the two girls were staying and then driven a short distance beyond where the sale was concluded and both boys arrested.

According to Gilreath, Batson, along with McCrae, fully participated in the commission of the crime. Both McCrae and Batson testified that Batson had no part whatever in the crime, his attention throughout the course of events being intimately devoted to the girl Brenda, who, according to them, was in a bedroom with Batson at the house during the time that McCrae and Gilreath were counting the tablets, money, negotiating, etc.

The appellant was released on bond on June 12th, and at his trial, commencing on October 9, 1972, he was represented by retained counsel of known ability, long experience and high repute. There was no demand for a preliminary hearing. The indictment charged appellant with having sold the tablets of LSD to an "Undercover SLED Agent", without naming him. After the jury was drawn but immediately before it was sworn, counsel for appellant moved to quash the indictment because the SLED agent had not been named therein. The solicitor moved to amend the indictment by inserting the name of the SLED agent, which motion was granted and the motion to quash denied. Counsel then moved to continue the case beyond the term, which motion was denied but a continuance granted until the following day.

The appellant's first contention is that the motion to quash the indictment should have been granted and the amendment thereto not permitted. This contention is clearly without any merit. The permitted amendment did not in any sense change the nature of the offense charged and was clearly permissible under the provisions of Sec. 17-410 of the South Carolina Code. He next contends that he was entitled to a continuance. It is elementary that motions for continuance are addressed to the sound discretion of the trial judge and the appellant fails to demonstrate wherein there was any abuse of discretion on the part of the trial judge in denying his motion for a continuance.

In the course of cross-examination of Gilreath, counsel for appellant sought to elicit from him the identity of the two girl agents or informers and the other male SLED agent who were present at the time. The solicitor objected, contending that the identity of the undercover agents was privileged information which the State did not have to disclose. The jury was excused and a colloquy between the court and counsel ensued, in the course of which the court expressed disappointment that neither counsel was prepared to cite any authority for his view. In the course of the collo-

quy, Gilreath told the court that the two girls were not commissioned agents of SLED but were "just informers" and that they were the only two whose identity he felt compelled to protect. In answer to a question by the court, he stated that he did not object to divulging the name of the male undercover agent who accompanied him. It was stated by the solicitor that the full identity of these two girls was unknown to Mr. Gilreath. Gilreath himself testified that they picked up temporary informers in every town they worked; that he had worked with Linda only two or three days and did not know her last name. He further testified that he had known Brenda a "good while", but inferentially, he did not know her last name either.

The court ruled that Gilreath could not be required to disclose the identity of the two girl informers beyond their first names by which they were known and called. Appellant's challenge of this ruling raises the most serious question on this appeal. At common law the prosecution in a criminal case is ordinarily privileged to withhold from an accused disclosure of the identity of persons who furnished information relative to violations of law to officers charged with the enforcement thereof. Such privilege is founded upon public policy to protect effective law enforcement, but it is not absolute and is subject to certain limitations and exceptions. The issue presented apparently is one of novel impression in this jurisdiction but there are numerous decisions from other jurisdictions, both state and federal, dealing with this rule of privilege, its application and exceptions thereto. A quite comprehensive annotation is contained in 76 A. L. R. (2d) 262. See also cases collected in footnotes, 23 C. J. S. 786, *et seq.,* Criminal Law, Sec. 954.

A leading case is that of *Roviaro v. United States,* 353 U. S. 53, 77 S. Ct. 623, 1 L. Ed. (2d) 639 (1957). In that case the court required that the government either disclose the identity of the informer, one John Doe, or else dismiss

the prosecution, the said John Doe being the sole participant, other than the accused, in the illegal transaction charged. In the *Roviaro* case the court cited three circuit court decisions in each of which it had been held that the identity of an informer "must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense." The opinion then went on to say,

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors."

The wisdom of the quoted language, we think, is borne out by a study of the above cited annotation and the reading of many cases therein cited. While no fixed rule with respect to disclosure is justifiable or established by the weight of authority, certain general principles seem to have evolved. The disclosure of the identity of one who is merely an informer and not a participant nor a material witness is not generally required. Where, however, the informer is also a participant and/or a material witness on the issue of guilt or innocence, disclosure may or may not be required depending upon various factors and circumstances, and the decisions from other jurisdictions are not altogether in accord.

There seems to be general agreement that there are certain prerequisites to requiring that the prosecution disclose the identity of an informer. It is recognized that the burden is upon the accused to show facts and circumstances giving rise to an exception to the privilege against disclosure and that there must be a timely request therefor. The decisions do not appear to be in accord, however, as to what constitutes a timely request. It is also generally recognized that the trial

court has considerable discretion as to ordering, or refusing to require, disclosure and that in the event of refusal, the burden is upon the accused to show prejudice resulting therefrom.

Some courts are of the view that the mere showing that the informer was either a participant and/or a material witness is sufficient to require disclosure since in the absence of an opportunity to interview the informer, the accused has no way of knowing whether the informer would corroborate or contradict incriminating evidence offered by the prosecution. Where, however, the informant is a witness, but not an active participant, there is authority for the proposition that any possible benefit to the accused is purely conjectural, while the loss to society in its efforts to cope with crime is real and substantial, so that disclosure should be refused.

With respect to those aspects of disclosure as to which there are apparently conflicting views, we do not think we are called upon under the facts of this case to make a choice, except as to what constitutes a timely request. The record here rather clearly shows, we think, that the appellant and his counsel had no reason whatever to believe that the appellant would be benefited by any testimony from any other witness present during the course of any of the related events. The issue would appear to have been raised purely as a matter of trial strategy; to serve the dual purpose of creating doubt in the minds of the jurors and laying a possible ground for appeal in the event of conviction. Four months elapsed between the arrest and the trial and there was no request for a preliminary hearing and no other effort on the part of the defense to ascertain the identity of the witnesses until after the trial had commenced, which was during the second or final week of the October term for Horry County, and even then only through cross-examination of Gilreath. It is clear from the colloquy between counsel and the court and the court's ruling, that had counsel desired to know the identity of the other male SLED

agent, such would have been disclosed. Counsel obviously refrained from attempting to learn his identity.

Since Gilreath denied the presence of the blonde girl in the automobile, testified to by Batson and McCrae, we know of no way that that court could have compelled him to identify some one whose existence he denied. Since, as far as the record shows, Gilreath knew the two girl informers only by their first names, had he been compelled to disclose every detailed bit of information he might have known about them it is at best speculative as to whether that would have been sufficient information to enable appellant's counsel to locate and contact them, and also speculative as to whether or not such contact could have been made within the term at which the case was being tried.

While a situation might very well arise where an accused would not know until during a trial that knowledge of the identity of an informer-witness might be beneficial or helpful to him, under the facts of this case we conclude that there was not a timely, bona fide request for the identity of these witnesses. The appellant admittedly knew of the existence of all of these witnesses for four months prior to the trial and if their identities were deemed of any importance or benefit to him, such should have been sought prior to the commencement of the trial. As mentioned above, courts from other jurisdictions are not in accord as to what constitutes a timely request, but in this jurisdiction, in view of our system of rotating circuit judges and fixed and limited terms of court, we conclude that a request to be timely should be made prior to the commencement of the trial where as here all of the facts other than identities were known to the accused, he was represented by retained counsel and there was abundant time in which to make the request prior to trial. We, accordingly, conclude and hold that there was no prejudicial error, upon the present record, in the ruling of the trial court.

At the conclusion of the trial, the trial judge was requested to charge the jury on behalf of the appellant that where the

State had witnesses known only to it and under its peculiar control and did not produce them, that their testimony would be presumed to be against the State. His Honor declined to so, charge, holding that to do so would defeat the entire purpose of the privilege of the State to withhold the identity of undercover agents or informers.

In quite a number of civil cases we have stated and/or applied the rule that if a party, without explanation, fails to produce the testimony of an available, material witness who is within some degree of control of the party, it may be inferred that the testimony of such witness, if presented, would be adverse to the party who failed to call the witness. Such rule has also been recognized in several criminal cases but no criminal case has been called to our attention wherein such rule has actually been applied. In the oft cited civil case of *Davis v. Sparks*, 235 S. C. 326, 111 S. E. (2d) 545, it was pointed out that:

"A litigant is not required to, produce as a witness every person who may give evidence in his favor; and his failure to do so does not necessarily imply a design on his part to suppress the truth. Inference from the unexplained failure of a party to call an available witness that the testimony of such witness would have been unfavorable may be drawn only where, under all the circumstances of the case, the failure to produce such witness creates suspicion of a wilful attempt to withhold competent testimony. Such suspicion is generally held not warranted where the material facts assumed to be within the knowledge of the absent witness have been testified to by other qualified witnesses."

We have repeatedly held in criminal cases that the State is not required to produce all available witnesses. *State v. Watts*, 249 S. C. 80, 152 S. E. (2d) 684; *State v. Richardson*, 253 S. C. 468, 171 S. E. (2d) 717. It is error, however, to, refuse to permit defense counsel to comment to the jury upon the absence of an officer who was present at the time of defendant's arrest. *State v. Peden*,

157 S. C. 459, 154 S. E. 658. Upon review of our own decisions, as well as authorities from other jurisdictions, we entertain grave doubt as to the propriety, in a criminal case, of the rule of an adverse inference from the failure to produce a material witness. Certainly, a charge of this proposition to a jury on behalf of either the State or the defense is not warranted except under most unusual circumstances, clearly within the purview of the principles quoted from *Davis v. Sparks, supra.*

In the instant case there was no error in the refusal of the requested charge. A full and logical explanation for the failure of the State to produce the additional witnesses was furnished to both the court and the jury, and, as held by His Honor, such a charge to the jury would have served to defeat the entire purpose of nondisclosure of the identity of undercover agents and informers.

We conclude that all exceptions are without merit and the judgment below is

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.