2340

The STATE, Respondent v. Juan Ramon BULTRON, Ivan Diaz, Angel Gonzales, Richard Gonzales, Gerardo Martinez and Vincente Torruella Martinez, Appellants.

(457 S.E. (2d) 616)

Court of Appeals

*Chief Atty. Daniel T. Stacey,* of *S.C. Office of Appellate Defense,* and *W. Gaston Fairey,* of *Fairey, Parise & Mills,* Columbia, *for appellants.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Charles F. Reid,* Columbia, and *Sol. Joseph J. Watson,* Greenville, *for respondent.*

Submitted Mar. 7, 1995.

Decided May 1, 1995

SHAW, Judge:

John Ramon Bultron, Ivan Diaz, Angel Gonzales, Richard Gonzales, Gerardo Martinez and Vincente Torruella Martinez (Appellants) were indicted along with Clarence Bryant[1] for trafficking in cocaine and transportation of cocaine. Appellants were convicted and sentenced to thirty years imprisonment and $200,000 fine for trafficking and, consecutively, to one year imprisonment and a $1,000 fine for transportation. Appellants appeal various aspects of the conviction. After careful consideration of the arguments, briefs and record on appeal, we affirm.

On October 5, 1992, a reliable informant contacted Sergeant P.L. Guy of the Greenville County Police Department and stated he had seen a quantity of cocaine in a room at a Greenville hotel. The informant was present when the cocaine was delivered. The informant further notified the police there would be a maroon-colored van with Florida license plates in front of the hotel room. Although the informant did not tell the police why he went to the room or how long he was there, an officer testified the police had used the informant on approximately forty occasions during an eighteen-month period.

In response to the information offered by the informant, law enforcement agents set up surveillance outside the hotel room. The agents watched the room for approximately 5

---

[1] Clarence Bryant has filed a separate appeal.

hours, from 11:30 a.m. until 4:30 p.m. At trial, the agents testified two men emerged from the room between 4:00 p.m. an 4:30 p.m. One of the men got into the van and sat in the driver's seat while the second man, Bryant, walked down a corridor and waved. The agents then observed three more men exit the corridor. Two of these men immediately entered the van and the third opened the back door of the van before entering. The police testified Bryant, who was not yet in the van, "looked up the road, looked back down the parking lot, turned around and walked back up the catwalk, looked to his left, looked to his right, turned back around, opened up his shirt . . . adjusted a weapon [a pistol] . . . [and] walked back down toward the corridor." Bryant then waved again and two more men exited the corridor carrying luggage bags. The two men put the bags into the back of the van, closed the van's rear door, and got into the van. Bryant closed the van's side door and got into the front passenger seat. The men then drove away from the hotel parking lot.

Police agents followed the van to a gas station where the agents arrested the driver and passengers. The agents observed a handgun on the floor of the van before making the arrests. The agents recovered the gun from the floor of the van, then conducted a warrantless search of the vehicle. The agents testified they found a partially unzipped leather carrying case containing 9.2 pounds of cocaine and several thousand dollars in cash in the rear of the van. The van was impounded and a second search was conducted on the following day. During the second search, another gun was recovered.

I.

Indictment No. 93-GS-23-2730, which charged Appellant Richard Gonzales with trafficking cocaine, was signed by the grand jury foreman but was not stamped or otherwise marked as a "true bill" or a "no bill."[2] Prior to trial, the defense moved to quash the indictment arguing that because the indictment was not stamped "true bill," there was no valid indictment. This motion was denied. On appeal, Richard Gonzales asserts the trial court erred in finding the

---

[2] The separate indictment charging Richard Gonzales with transportation of cocaine was returned by the grand jury signed by the foreman and stamped "True Bill."

indictment charging him with trafficking cocaine was valid. We disagree.

A facial irregularity in an indictment does not render the indictment invalid where the indictment is in writing and published by the clerk. *Pringle v. State*, 287 S.C. 409, 339 S.E. (2d) 127 (1986). Proceedings in a court of general jurisdiction will be presumed regular absent evidence to the contrary. *Id.*

During the hearing on Richard Gonzales' motion to quash the subject indictment, the State presented testimony from a Greenville County investigator whose employment duties include serving as "docket coordinator" for the grand jury and assisting the grand jury in every meeting. The investigator testified the grand jury's regular procedure was to deliberate on the indictments presented to them and then publish their findings in open court. The investigator further testified he was present during the April 13, 1993 term of the grand jury, the term during which Richard Gonzales was indicted, and the grand jury followed its normal procedure. According to the investigator, the grand jury acted on every bill of indictment presented to them during that term and returned "true bills" on every bill of indictment. The State also presented testimony from the court reporter who was present when the clerk published the grand jury's findings. The court reporter, reading from the record of the court's proceeding on April 13, 1993 testified the clerk stated "the grand jury returned today with 771 true bills and no no bills, and all signed by Colleta V. Tucer, Foreman." Finally, a legal secretary responsible for physically maintaining and recording the indictments for the court, testified she retrieved the April 13, 1993 indictments from the grand jury and of all the indictments returned, including the subject indictment, none were "no bills."

Because it is evident from the record that 1) the subject indictment is in writing and signed by the grand jury foreman; 2) the grand jury considered the bill of indictment charging Richard Gonzales with trafficking during its April 13, 1993 term; 3) all bills of indictment presented to the grand jury during the April 13, 1993 term were acted on; and 4) no "no bills" were returned during the April 13, 1993 term, we agree with the trial court it is evident the subject bill of indictment was necessarily true billed and the lack of a stamp saying as

much was merely a scrivener's error. Thus, we hold the trial court properly refused to quash the indictment.

## II.

Appellants assert the trial court erred in denying Appellants' pretrial motion to compel the State to disclose the identity of its confidential informant. We disagree.

Generally, the State may not be compelled to disclose the names of its confidential informants. *State v. Burney*, 294 S.C. 61, 362 S.E. (2d) 635 (1987). However, this privilege of nondisclosure must give way to the rights of the accused where the informant's identity is relevant and helpful to the defense or is essential for a fair determination of the State's case against the accused. *State v. Hayward*, 302 S.C. 75, 393 S.E. (2d) 918 (1990). In determining whether disclosure of an informant's identity is essential to the defense, the trial court must consider whether the informant is a mere "tipster" who has only peripheral knowledge of the crime or an active participant in the criminal act and/or a material witness on the issue of guilt or innocence. *State v. Diamond*, 280 S.C. 296, 312 S.E. (2d) 550 (1984); *State v. Batson*, 261 S.C. 128, 198 S.E. (2d) 517 (1973). Even if the informant is an active participant in the criminal act and/or a material witness, the court may still sustain an invocation of the nondisclosure privilege if other factors and circumstances warrant doing so. *Id.* In short, the trial court must balance the public's interest in perpetuating the flow of vital information to law enforcement officials against the right of an individual to prepare his defense.

Appellants assert the State should have been required to disclose the name of the informant because the informant could have offered testimony as to the identity of persons present in the hotel room when the cocaine was delivered which testimony would have been material to the issue of constructive possession.[3] We have reviewed the record on appeal and find this argument to be without merit.

---

[3] A person is guilty of trafficking cocaine if he is "knowingly in actual or constructive possession of . . . [t]en grams or more of cocaine or any mixtures containing cocaine." S.C. Code Ann. § 44-53-370(e)(2) (Supp. 1993). Proof of constructive possession requires a showing that the accused had knowledge of and dominion or control over either the drugs or the premises upon which the drugs were found. *State v. Ellis*, 263 S.C. 12, 207 S.E. (2d) 408 (1974). Mere

The informant's role in this case was limited to calling the police and stating he had observed a quantity of cocaine in a hotel room. There is no evidence in the record indicating the informant participated in or assisted with the actual delivery of the drugs or the subsequent arrests. The State presented evidence Appellants were in constructive possession of the narcotics independent of the information offered by the informant. Clarence Bryant was observed by the police outside the hotel room carrying a pistol and motioning to the Appellants before they entered the van. All of the Appellants, except the driver, entered the van only after receiving a signal from Bryant, including two men carrying luggage. As noted above, the driver exited the hotel room with Bryant.

Bryant was further observed outside the hotel room looking up and down the road and scanning the parking lot. The van in which the Appellants were riding exited the parking lot only after Bryant completed this inspection.

Obviously, the jury considered Appellants' furtive and suspicious behavior in the hotel parking lot, together with the recovery of the cocaine and guns from the van, sufficient circumstantial evidence to prove Appellants were in constructive possession of the narcotics independent of whether the informant witnessed the actual delivery of the drugs to the hotel room. Thus, Appellants have failed to convince this Court the identity of the informant was critical to the preparation of their respective defenses.

## III.

Appellants next contend the trial court erred in finding there was probable cause for the police to seize cocaine from the bag in the rear of the van in which Appellants were riding when they were arrested. We disagree.

Generally, a warrantless search is per se unreasonable and thus violative of the Fourth Amendment's prohibition against unreasonable searches and seizures. *State v. Bailey*, 276 S.C. 32, 274 S.E. (2d) 913 (1981). However, a warrantless search will withstand constitutional scrutiny

presence in the area where drugs are found does not constitute constructive possession. *State v. Tabory*, 260 S.C. 355, 196 S.E. (2d) 111 (1973). Constructive possession may be proven by circumstantial evidence. *State v. Crane*, 296 S.C. 336, 372 S.E. (2d) 587 (1988).

where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule. *State v. Brown,* 289 S.C. 581, 347 S.E. (2d) 882 (1986). The burden of establishing probable cause as well as the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures is upon the prosecution. *Id.*

One exception to the Fourth Amendment exclusionary rule, commonly known as the automobile exception, allows law enforcement officials to conduct a search of an automobile based on probable cause alone due to the lessened expectation of privacy in motor vehicles traveling on public highways. *State v. Cox,* 290 S.C. 489, 351 S.E. (2d) 570 (1986). Therefore, under the automobile exception, if probable cause exists to justify the warrantless search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its content that may conceal the object of the search.

Another established exception to the exclusionary rule is the exigent circumstances doctrine which allows law enforcement agents to conduct a warrantless search based upon probable cause when there exists a compelling need for official action and no time to secure a warrant. *Id.*

The standard for probable cause to conduct a warrantless search is the same as that for a search with a warrant. *State v. Peters,* 271 S.C. 498, 248 S.E. (2d) 475 (1978). That is, a justifiable determination, based upon the totality of the circumstances and in view of all the evidence available to law enforcement officials at the time of the search, that there exists a practical, nontechnical probability that a crime is being committed or has been committed and incriminating evidence is involved. *State v. Adams,* 291 S.C. 132, 355 S.E. (2d) 483 (1987) (determination of probable cause depends on totality of the circumstances); *State v. Owens,* 2275 S.C. 586, 274 S.E. (2d) 510 (1981) (holding where a search warrant has been issued, existence of probable cause determined by information available to magistrate at the time the warrant was issued).

On appeal, Appellants argue the law enforcement officials wrongfully waited for them to enter the van in order to establish exigent circumstances instead of seeking a warrant to search the hotel room based on the infor-

mation provide by the informant. This argument is without merit. Law enforcement officials are not constitutionally or otherwise legally compelled to halt a criminal investigation the moment they have minimal evidence to establish probable cause. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed. (2d) 374 (1966). It is within the discretion of the investigating officers to act to secure a search warrant when they deem sufficient evidence is present. *Id.* To hold otherwise would seriously hinder the investigatory powers of law enforcement officials and often force them to forego evidence that would strengthen their case against perpetrators.

Moreover, we agree with the trial judge that the warrantless search of the van was proper under the automobile exception to the exclusionary rule as well as under the exception of exigent circumstances. The law enforcement officers had probable cause to believe the Appellants were transporting contraband in the van pursuant to the tip from the reliable informant and in light of the Appellants' suspicious and highly orchestrated exit from the hotel with bags that could reasonably conceal cocaine. Thus the officers acted within their discretion in searching every part of the vehicle and its contents which may have concealed the contraband. Moreover, once the officers observed Bryant carrying a concealed weapon and then entering a vehicle, exigent circumstances existed justifying a warrantless search of that vehicle. Again, the officers acted completely within their authority in searching every part of the vehicle which may have concealed the weapon.

Having held the law enforcement officers properly conducted a warrantless search of the vehicle in which Appellants were traveling, we need not reach the Appellants' other arguments regarding the constitutionality of the warrantless search.

## IV.

Appellants next argue the trial judge erred in denying the Appellants' motion for a directed verdict. Appellants assert no evidence exists to prove the Appellants were ever in constructive presence of the cocaine. We disagree.

In ruling on a motion for directed verdict, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight. The trial judge must

submit the case to the jury if there exists any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888 (1989). As previously noted, proof of constructive possession requires a showing that the accused had knowledge of and dominion or control over either the drugs or the premises upon which the drugs were found. *State v. Ellis*, 263 S.C. 12, 207 S.E. (2d) 408. Although mere presence in the area where drugs are found does not constitute constructive possession, constructive possession may be proven by circumstantial evidence. *State v. Tabory*, 260 S.C. 355, 196 S.E. (2d) 111; *State v. Crane*, 296 S.C. 336, 372 S.E. (2d) 587. Viewing the evidence in the light most favorable to the State, we hold there was sufficient circumstantial evidence that each Appellant was in constructive possession of the contraband to submit the question of guilt to the jury.

V.

Finally, Appellants assert the trial judge erred in instructing the jury on the law governing aiding and abetting and accomplice liability. Appellants argue the jury should not have been instructed on these legal theories because there was no evidence showing an agreement to participate in a criminal act. We disagree.

It is well established that a formally expressed agreement is not necessary to establish conspiracy and, in fact, such may be shown by circumstantial evidence and the conduct of the parties. *State v. Oliver*, 275 S.C. 79, 267 S.E. (2d) 529 (1980). Here, the Appellants all exited from the same hotel immediately before getting into the same vehicle. The police described the Appellants' exit from the hotel as suspicious and highly choreographed. The vehicle was rented, although not in the name of any Appellant, presumably borrowed, and large enough to carry all seven of its passengers and their luggage. All of the Appellants were traveling in the same vehicle immediately before they were arrested. Two guns and 9.2 pounds of cocaine were recovered from this vehicle. Furthermore, we note the trial court specifically and correctly charged the jury that mere presence at the scene of a crime does not constitute guilt, thus eliminating any danger the jury

would be misled by the charge. In light of the evidence, albeit circumstantial, together with the trial court's express qualification of its charge, we hold a jury could reasonably conclude not only that the Appellants were knowingly involved in the commission of a criminal act, but that there had been some planning and agreement among them pertaining to the act.

For the reasons stated, the decision of the trial court is

Affirmed.

GOOLSBY, J., and HOWARD, A.J., concur.