552 S.E.2d 773

**The STATE, Respondent,**

v.

**Lazarus M. BRANNON and Joe Nathan Mayberry, Appellants.**

**No. 3387.**

Court of Appeals of South Carolina.

Heard June 4, 2001.
Decided Sept. 10, 2001.

---

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellants.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Holman C. Gossett, of Spartanburg, for respondent.

HUFF, J.:

Lazarus M. Brannon and Joe Nathan Mayberry appeal from their convictions for trafficking in crack cocaine. Both were sentenced to twenty-five years imprisonment and a $50,000.00 fine. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of January 15, 1999, Agent Darrell Duncan of the Cherokee County Sheriff's Department received information from a confidential reliable informant that Brannon was driving to New Jersey to pick up a quantity of crack cocaine. Duncan testified he had received information from the informant before, all information he previously received from the informant had been reliable, and he had obtained a conviction for trafficking based on the informant's information. Duncan stated he could not recall whether the confidential informant told him he received this information from Brannon or from a woman named Cat, who was unknown to Duncan.

The following night, Agent Duncan received a telephone call from a woman who identified herself only as Cat. She informed Deputy Duncan that Brannon and "Joe Cool" would be driving back to Cherokee County at approximately 9:00 that night, on highway I-85, with a quantity of cocaine in their car. Cat described the car to Deputy Duncan and gave him the tag number. She stated the cocaine was in the trunk of the car, hidden under the carpet, and she had observed them placing the drugs there. Duncan had never before received information from Cat, and he considered it to be an anonymous tip. Officer David Parker, assigned at that time to the Metro Narcotics Unit of the Gaffney Police Department, testified he knew the car in question from a previous narcotics investiga-

tion involving Brannon. Agent Duncan ran the tag number and found it was registered to Brannon.

Based on the information they received, Agent Duncan and Officer Parker estimated a time of arrival and set up surveillance in an unmarked vehicle on I–85, just inside the South Carolina border. At approximately 8:00 a.m., they made visual contact with the vehicle in which Brannon and Mayberry were riding. Officer Parker, who was driving the unmarked car, testified the vehicle sped up upon passing their car, although he did not know how fast it was going. The officers began following the car, and the driver took the first exit in South Carolina. The driver then pulled into and parked at a Wendy's restaurant parking lot.

Brannon and Mayberry got out of the vehicle and began walking toward the Wendy's restaurant. The pair were acting nervous, jumping out of the vehicle quickly and walking away at a fast pace with their heads down. When the officers asked to talk to them, Brannon and Mayberry kept walking. Because of the pair's behavior, and the fact they had information Brannon and Mayberry would possibly try to run, the officers immediately intercepted them, placed them in handcuffs and read them their *Miranda* rights. A few other officers arrived on the scene. Officer Parker told Brannon and Mayberry he had information they had narcotics in the vehicle, and asked Brannon for his written consent to a vehicular search. Brannon acquiesced. A search of the trunk of the vehicle revealed two soap boxes containing over five ounces of crack cocaine under the carpet.

At trial, Brannon moved to suppress all evidence seized from the vehicle and all statements made during the detention on the ground his immediate detention and handcuffing resulted in an involuntary consent to search. Mayberry specifically declined to join in the motion. The trial court denied the motion to suppress, finding Brannon's consent to search the vehicle was voluntarily given.

### ISSUE

The only issue raised on appeal is whether the trial court erred in refusing to suppress the crack cocaine and statements made by Brannon and Mayberry.

## LAW/ANALYSIS

### I. Mayberry's Appeal

■ As an initial matter, we note the issue challenged on appeal is not preserved for review in regard to Mayberry. Mayberry neither raised the issue at trial nor joined in Brannon's motion to suppress. *See State v. Carriker*, 269 S.C. 553, 555, 238 S.E.2d 678, 678 (1977) (appellant may not bootstrap an issue for appeal by way of a co-defendant's objection). In fact, Mayberry conceded at trial he had no standing to contest the admission of the evidence on this basis. *See State v. Benton*, 338 S.C. 151, 156–57, 526 S.E.2d 228, 231 (2000) (an issue conceded in the trial court cannot be argued on appeal).

### II. Brannon's Appeal

On appeal, Brannon contends the trial judge erred in failing to suppress the evidence seized and subsequent statements made because "he was detained and handcuffed before ever giving 'consent' to search." We disagree.[1]

■ The admission of such evidence is within the sound discretion of the trial judge whose ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Dorce*, 320 S.C. 480, 483, 465 S.E.2d 772, 773 (Ct.App.1995). In criminal cases, this court sits to review errors of law only, and we are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). The appellate court does not re-evaluate the facts, but simply determines whether the trial judge's ruling is supported by any evidence. *Id.*

■ Whether a consent to search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. The State bears the burden of establishing voluntariness of

---

1. Brannon also summarily contends on appeal that the evidence and statements should have been suppressed because they were obtained as a result of an "illegal arrest." Brannon did not raise this "illegal arrest" argument below, but only that the circumstances rendered the consent involuntary. *See State v. Dickman*, 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000) (an argument is procedurally barred when it is not raised in the lower court; a party cannot argue one ground below and then argue another ground on appeal).

the consent. *State v. Dorce*, 320 S.C. at 482, 465 S.E.2d at 773; *State v. Wallace*, 269 S.C. 547, 550, 238 S.E.2d 675, 676 (1977) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The "totality of the circumstances" test applies whether the consent was given in a noncustodial or custodial situation. *Wallace*, 269 S.C. at 550, 238 S.E.2d at 676. In a custodial situation, the custodial setting is a factor to be considered in determining whether consent was voluntarily given. *Id.* at 552, 238 S.E.2d at 677. Custody alone, however, is not enough in itself to demonstrate a coerced consent to search. *See United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976) (no involuntary consent shown where defendant was arrested and in custody, but consent was given while on a public street and not in confines of a police station, he was given his *Miranda* warnings, and he was cautioned the results of the search of his car could be used against him); *see also Wallace*, 269 S.C. at 552, 238 S.E.2d at 677 (custody itself is not enough to invalidate a consent search).

 Considering the "totality of the circumstances" in this case, we find no abuse of discretion in the trial judge's finding that Brannon's consent was voluntarily given. While he was clearly in custody at the time consent was given, custody alone does not vitiate a consent for search. There is no evidence of any overt act or threat of force against Brannon, nor promises made or any other form of coercion. Further, it is undisputed Brannon was given his *Miranda* warnings prior to executing the written consent. We therefore find there was evidence to support the trial judge's ruling.

For the foregoing reasons, appellants' convictions are

**AFFIRMED.**

SHULER, J., concurs.

ANDERSON, J., concurring in result only in a separate opinion.

ANDERSON, J. (concurring in result only):

I respectfully concur in result only. I disagree with the reasoning and analysis of the majority. The reliance by the

majority on the consent given by Brannon is unnecessary. I do not deal with the issue of consent because the principle of "probable cause" is dispositive. This case presents the quintessential "probable cause" conundrum.

## I. *WARRANTLESS SEARCH*

Generally, a warrantless search is per se unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures. *State v. Dupree*, 319 S.C. 454, 462 S.E.2d 279 (1995). However, a warrantless search will withstand constitutional scrutiny where the search falls within one of several well recognized exceptions to the warrant requirement. *Dupree*, 319 S.C. at 456, 462 S.E.2d at 281; *State v. Bailey*, 276 S.C. 32, 274 S.E.2d 913 (1981). These exceptions include: (1) search incident to a lawful arrest; (2) "hot pursuit"; (3) stop and frisk; (4) automobile exception; (5) "plain view" doctrine; (6) consent; and (7) abandonment. *Dupree*, 319 S.C. at 456–57, 462 S.E.2d at 281. The burden of establishing probable cause and the existence of circumstances constituting an exception to the general prohibition against warrantless searches is upon the prosecution. *State v. Bultron*, 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995). *See also Dupree*, 319 S.C. at 456, 462 S.E.2d at 281 (burden is upon State to justify warrantless search).

## II. *AUTOMOBILE EXCEPTION TO WARRANT REQUIREMENT*

A warrantless search of a vehicle may be made if (1) there is probable cause to believe the vehicle contains evidence of a crime; and (2) there are exigent circumstances arising out of the mobility of the vehicle and its consequently likely disappearance if the search is not executed immediately. This is commonly referred to as the *Carroll* Doctrine. *See Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283–84, 69 L.Ed. 543, 549 (1925)(holding "the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.").

The two bases for the exception are: (1) the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained; and (2) the lessened expectation of privacy in motor vehicles which are subject to governmental regulation. *State v. Cox*, 290 S.C. 489, 351 S.E.2d 570 (1986). When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes-temporary or otherwise-the two justifications for the vehicle exception come into play. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. *Id.* Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulations inapplicable to a fixed dwelling. *Id.*

## A. Probable Cause

Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise. *Wortman v. City of Spartanburg*, 310 S.C. 1, 425 S.E.2d 18 (1992); *State v. Blassingame*, 338 S.C. 240, 525 S.E.2d 535 (Ct.App. 1999).

The standard for probable cause to conduct a warrantless search is the same as that for a search with a warrant. *State v. Peters*, 271 S.C. 498, 248 S.E.2d 475 (1978); *State v. Bultron*, 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995). "That is, a justifiable determination, based upon the totality of the circumstances and in view of all the evidence available to law enforcement officials at the time of the search, that there exists a practical, nontechnical probability that a crime is being committed or has been committed and incriminating evidence is involved." *Bultron*, 318 S.C. at 332, 457 S.E.2d at 621. *See also State v. Adams*, 291 S.C. 132, 352 S.E.2d 483 (1987)(determination of probable cause depends on totality of circumstances).

In *State v. Dupree*, 319 S.C. 454, 462 S.E.2d 279 (1995), our Supreme Court discussed probable cause:

"In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." "And in determining whether the officer acted reasonably ... due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from facts in light of his experience." Mere suspicions of the officer will not support a finding of probable cause.

. . . .

... The "experience of a police officer is a factor to be considered in the determination of probable cause, ... but the relevance of the suspect's conduct should be sufficiently articulable that its import can be understood by the average reasonably prudent person."

*Dupree*, 319 S.C. at 458–59, 462 S.E.2d at 282 (citations omitted).

## B. Exigent Circumstances

Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The opportunity to search an automobile is fleeting since a car is readily movable. *Id.* An immediate intrusion is necessary because of the nature of an automobile in transit. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). *See also* 79 C.J.S. *Searches and Seizures* § 84 (1995)(mobility of vehicle gives rise to exigency justifying search). The ready mobility of the vehicle is one of the principal bases of the automobile exception. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

## C. Probable Cause *Alone* is Sufficient Under Automobile Exception

The automobile exception allows law enforcement officials to conduct a search of an automobile based on probable cause

*alone* due to the lessened expectation of privacy in motor vehicles traveling on public highways. *State v. Cox,* 290 S.C. 489, 351 S.E.2d 570 (1986); *State v. Bultron,* 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995). *See also* 68 Am.Jur.2d *Searches and Seizures* § 268 (2000)(warrantless search of car is valid under Fourth Amendment, so long as search is based on probable cause). The Supreme Court, in *State v. Cox,* examined the principle of "probable cause" as it relates to the automobile exception:

The [*California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) ] Court makes clear that under the automobile exception, probable cause *alone* is sufficient to justify a warrantless search. As the Court stated, "the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the *exigencies attendant to ready mobility* justify searches [of vehicles] without prior recourse to the authority of a magistrate so long as the *overriding standard of probable cause is met.*" That is, the inherent mobility of automobiles provides the requisite exigency.

*Cox,* 290 S.C. at 492, 351 S.E.2d at 571–72 (emphasis in original) (citation omitted).

Under the automobile exception, if probable cause exists to justify the warrantless search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); *Bultron,* 318 S.C. at 332, 457 S.E.2d at 621.

### III. AUTOMOBILE EXCEPTION APPLICABLE TO CASE AT BAR

Probable cause to search Brannon's vehicle existed under the facts of the instant case. On January 15, 1999, Agent Darrell Duncan received information from a reliable confidential informant that Brannon was driving to New Jersey to pick up a quantity of crack cocaine. Duncan had received information from the informant before. All information he previously received from the informant had been reliable. Moreover, Duncan testified the State had obtained a conviction for trafficking based on information provided by the informant.

In addition, on January 16, 1999, Duncan received an anonymous tip from a woman who identified herself as "Cat." Cat advised Duncan that Brannon and "Joe Cool" would be driving back to Cherokee County on highway I–85 at about 9:00 p.m. that night with a quantity of cocaine in the car. She supplied Duncan with vital information: the tag number and a description of the car. Cat stated the drugs were in the trunk of the car, hidden under the carpet. She had observed the men place the drugs there. Officer David Parker knew the vehicle in question from a prior narcotics investigation involving Brannon. When Agent Duncan ran the tag number, he discovered the car was registered to Brannon.

Based on the information they received, Agent Duncan and Officer Parker set up surveillance on I–85. Around 8:00 a.m., they observed the vehicle in which Brannon and Mayberry were riding. The vehicle sped up upon passing the unmarked police car. The officers followed the car, which took the first exit in South Carolina and pulled into a Wendy's parking lot. Brannon and Mayberry quickly jumped out of the vehicle and walked at a fast pace with their heads down toward the Wendy's restaurant. The men were acting nervous. When the officers asked to speak with them, Brannon and Mayberry continued walking. Due to the suspicious behavior of the pair, and the fact that the officers possessed information that Brannon and Mayberry would possibly try to run, the officers stopped them, placed them in handcuffs, and read them their rights.

The law enforcement officers had probable cause to believe Brannon and Mayberry were transporting drugs in the vehicle pursuant to the tips from the reliable confidential informant and the anonymous informant. Accordingly, the warrantless search of the vehicle was proper under the automobile exception without resort to a "consent" analysis.