THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Allen Robinson, Appellant.
 
 
 

Appeal From Aiken County
 Reginald I. Lloyd, Circuit Court Judge

Unpublished Opinion No. 2007-UP-085
Submitted February 1, 2007  Filed February 15, 2007

REVERSED

 
 
 
Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Sr. Assistant Attorney General Norman Mark Rapoport, of Columbia, Solicitor Barbara R. Morgan, of Aiken, for Respondent.
 
 
 

 PER CURIAM:  Allen Robinson appeals his conviction for possession of cocaine.  He asserts the circuit court judge erred in refusing to suppress the drug evidence that was seized during a search of his vehicle at a drivers license checkpoint.[1]  We reverse.[2]
FACTS
Prior to Robinsons trial for possession with intent to distribute cocaine, Robinsons counsel moved to suppress the evidence of the cocaine.  Specifically, he contended the cocaine was found pursuant to an illegal search and seizure.  Based on this motion, the trial judge held a suppression hearing during which Trooper Steven Branham testified regarding the search.  
On July 5, 2002, Trooper Steven Branham was working at a drivers license checkpoint in Aiken County.  At approximately 2:30 p.m., Branham observed a vehicle slowing down and speeding up as it approached the checkpoint.  While he was watching the vehicle, Branham noticed that Robinson, the driver, and his two passengers were rummaging and acting frantic.  He further testified they were frantically moving, throwing arms around.  Branham admitted that he initially observed this behavior at a distance of [a]nywhere from 75 to 100 yards.  Based on his experience, Branham believed the occupants of the vehicle were hiding something.  According to Branham the vehicle stopped just before the checkpoint.  As he approached the vehicle, Branham became suspicious because the occupants appeared very nervous.  Branham questioned them as to whether they were hiding anything.  Branham testified the occupants responded in a nervous tone that they were not hiding anything at all.  
Branham then looked inside the vehicle and saw a brown paper bag containing a can, which he described as a 22 oz. beer can or larger can.  Although Branham testified that he believed the can contained an alcoholic beverage, he could not immediately tell that it was a beer can or that the can was open.  The testimony reveals the can was concealed in the paper bag and was pointing away from Branham when he looked in the window of the vehicle.  In fact, Branham stated, [i]t was not in an open situation.  A brown bag goes up to the tip of the rim of the can.  It wasnt like an open and look.  This is a bag that was molded or formed, you know, like it had been used.  Branham stated his observation of the can further raised his suspicion of the occupants.  After instructing Robinson to pull over to the side of the road, Branham then ordered the occupants to exit the vehicle.  Branham asked Robinson if he was the owner of the vehicle and if there was anything illegal in the vehicle.  Robinson acknowledged he owned the vehicle and further responded to the question, I dont know; there shouldnt be anything illegal in the car.    
At that point, Branham proceeded to search the vehicle to see if there [were] any other beer cans or other illegal contraband in the vehicle.  Branham discovered the can in the brown paper bag was in fact an open beer can.  During the course of his search, Branham found a plastic bag containing 1.22 grams of cocaine located underneath the drivers seat.    
On cross-examination, Branham admitted he did not ask Robinson for his consent to search the vehicle.  Branham further acknowledged that Robinson and his passengers denied ownership of the drugs.  Branham also did not issue a ticket for an open container violation.            
At the conclusion of Branhams testimony, the judge heard arguments from counsel regarding the motion to suppress.  Although Robinsons counsel did not challenge the legitimacy of the license checkpoint, he asserted Robinsons and his passengers behavior at the checkpoint did not rise to the level of probable cause or even reasonable suspicion that criminal activity was happening.  Additionally, counsel argued Branhams testimony did not give rise to the automobile exception to the warrant requirement.  He contended Branham could not have seen the beer can as an open container because it was not in plain view, but instead, was facing away from him when he looked through the window of the vehicle.  Because Robinson did not receive a ticket for the open container violation, counsel pointed out that the search could not be considered incident to arrest. 
In response, the solicitor argued that Branham, under the totality of the circumstances, had probable cause to search the vehicle based on the following:  (1) Robinson approached the checkpoint in a suspicious manner; (2) the occupants of the vehicle were frantically moving around as if they were hiding something; (3) Robinson stopped the vehicle several yards before the checkpoint; (4) the occupants of the vehicle gave nervous, vague answers to Branham when he questioned them; and (5) the twenty-two ounce can wrapped in a brown paper bag appeared to be an open beer container.    
In reply, Robinsons counsel stated the nervous behavior of the occupants of the vehicle might have been sufficient for Branham to ask them to exit the vehicle and conduct a Terry pat-down for weapons.  However, she asserted it was not sufficient to conduct a search of the vehicle.  Furthermore, counsel contended the existence of a beer can in the back seat of the vehicle did not give rise to probable cause because Branham could not tell by plain view that the can was open.  
After hearing arguments from counsel, the trial judge ultimately denied Robinsons motion to suppress.  The judge found Branham had probable cause to conduct the search based on the following:  (1) Robinson and his passengers appeared to be reaching downward as they approached the checkpoint; (2) Robinson drove slowly up to the checkpoint and stopped some distance before the checkpoint; and (3) the open container in the back seat of the vehicle.
The trial proceeded with Branham recounting the incident in the presence of the jury.  Robinson, the defenses only witness, then testified.  Robinson testified that at the time of the incident he was driving back from Augusta with his brother and his brothers friend after picking up fish for a family reunion on the July 4th weekend.  He explained that as he approached the checkpoint he slowed down in order to allow his brother time to fasten his seatbelt.  When Branham found the cocaine, Robinson denied that it belonged to him.  He further testified that he did not know anything about the cocaine.  Additionally, Robinson claimed he had no idea there was an open beer can in his car at the time he was stopped at the checkpoint.   
The jury convicted Robinson of the lesser-included offense of possession of cocaine.  The judge sentenced Robinson to eighteen months imprisonment suspended on eight months probation.  This appeal followed.
DISCUSSION
Robinson argues the circuit court judge erred in denying his motion to suppress.  He contends there was insufficient probable cause for Branham to believe a crime was being committed.  In support of this contention, Robinson asserts [t]he beer can was contained in a paper bag and its nature was not immediately apparent to [Branham].  Furthermore, [Branham] admitted that he did not normally ticket for a violation of the open container law.  Additionally, Robinson relies on Branhams testimony that he uses the open container law as a tool to go further into something.  As will be more fully discussed, we agree with Robinson.
The Fourth Amendment to the United States Constitution guarantees [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.  U.S. Const. amend. IV. Evidence obtained as a result of an unlawful search constitutes a violation of the Fourth Amendment and is inadmissible at trial. State v. Nelson, 336 S.C. 186, 192 n.3, 519 S.E.2d 786, 789 n.3 (1999).  The admission of such evidence is within the sound discretion of the trial judge whose ruling will not be disturbed on appeal absent an abuse of discretion. 
State v. Brannon, 347 S.C. 85, 89, 552 S.E.2d 773, 775 (Ct. App. 2001).
On appeal from a suppression hearing, this court is bound by the circuit courts factual findings if any evidence supports the findings. State v. Abdullah, 357 S.C. 344, 349, 592 S.E.2d 344, 347 (Ct. App. 2004).  In an appeal from a motion to suppress evidence based on Fourth Amendment grounds,
an appellate court may conduct its own review of the record to determine whether the evidence supports the circuit courts decision.  Id. at 349-50, 592 S.E.2d at 347.
Generally, a warrantless search is per se unreasonable and thus violative of the Fourth Amendments prohibition against unreasonable searches and seizures. State v. Bultron, 318 S.C. 323, 331, 457 S.E.2d 616, 621 (Ct. App. 1995).  However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule. Id. at 331-32, 457 S.E.2d at 621.  These exceptions include:  (1) search incident to a lawful arrest; (2) hot pursuit; (3) stop and frisk; (4) automobile exception; (5) plain view doctrine; (6) consent; and (7) abandonment. State v. Dupree, 319 S.C. 454, 456-57, 462 S.E.2d 279, 281 (1995), cert. denied, 516 U.S. 1131 (1996).  The burden of establishing probable cause as well as the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures is upon the prosecution. Bultron, 318 S.C. at 332, 457 S.E.2d at 621. 

The two bases for the [automobile] exception are:  (1) the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained; and (2) the lessened expectation of privacy in motor vehicles which are subject to government regulation. State v. Cox, 290 S.C. 489, 491, 351 S.E.2d 570, 571 (1986).  [U]nder the automobile exception, probable cause alone is sufficient to justify a warrantless search. 
Id. at 492, 351 S.E.2d at 571-72.
The standard for probable cause to conduct a warrantless search is the same as that for a search with a warrant.  Bultron, 318 S.C. at 332, 457 S.E.2d at 621.  This requires, a justifiable determination, based upon the totality of the circumstances and in view of all the evidence available to law enforcement officials at the time of the search, that there exists a practical, nontechnical probability that a crime is being committed or has been committed and incriminating evidence is involved.  Id.  [U]nder the automobile exception, if probable cause exists to justify the warrantless search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its content that may conceal the object of the search.  Id. at 332, 457 S.E.2d at 621.
In analyzing the Fourth Amendment implications of a routine traffic stop, this court has explained:

A routine stop constitutes a Fourth Amendment seizure so that when the purpose justifying the stop is exceeded, the detention becomes illegal unless a reasonable suspicion of some other crime exists.  United States v. Sullivan, 138 F.3d 126 (4th Cir. 1998); see State v. Robinson, 306 S.C. 399, 402, 412 S.E.2d 411, 413 (1991)(To justify a brief stop [or] detention, the police officer must have a reasonable suspicion that the person has been involved in criminal activity.).  The term reasonable suspicion requires a particularized and objective basis that would lead one to suspect another of criminal activity. 
United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed. 621 (1981); State v. Woodruff, 344 S.C. 537, 544 S.E.2d 290 (Ct. App. 2001).  In determining whether reasonable suspicion exists, the whole picture must be considered. United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).  The burden is on the State to articulate facts sufficient to support reasonable suspicion. State v. Butler, 343 S.C. 198, 539 S.E.2d 414 (Ct. App. 2000).          

State v. Pichardo, 367 S.C. 84, 104, 623 S.E.2d 840, 851 (Ct. App. 2005).  
Initially, we note that Robinson does not challenge the legality of the drivers license checkpoint.  Therefore, our analysis is confined to a determination of whether the circuit court judges denial of Robinsons motion to suppress based on Branhams actions at the checkpoint was supported by any evidence.  Although we are cognizant of this limited standard of review, we find there is no evidence to support the judges decision.
Based upon the totality of the circumstances and in view of all the evidence available to Branham at the time of the search, we believe the warrantless search was not justified.  We find the State failed to meet its burden to articulate facts sufficient to support a reasonable suspicion that Robinson was involved in criminal activity.
In analyzing this issue, we review the facts submitted by the State during the suppression hearing.  Essentially, Branham reached his decision to search Robinsons vehicle based on the following observations:  1). the suspicious behavior of Robinson and his passengers as they approached the checkpoint; 2). the nervous behavior of Robinson and his passengers once the vehicle stopped at the checkpoint; and 3). the presence of a large can wrapped in a paper bag in Robinsons vehicle.  Specifically, Branham described Robinsons and his passengers behavior as they approached the checkpoint as frantically moving, throwing [their] arms around.  He found [t]his was a very suspicious stopping, starting, frantic people inside; very nervous acting people.  At the checkpoint, Branham claimed the occupants of the vehicle appeared very nervous as if they were hiding something.  In addition to this behavior, Branham stated his decision to conduct the search was based on his observation of what he believed was a twenty-two ounce can of beer wrapped in a paper bag in the backseat of the vehicle.          
Under these circumstances, we believe Branham lacked a particularized and objective basis which would have lead him to suspect Robinson of criminal activity.  In terms of the suspicious behavior of Robinson and his passengers, it is significant to note that Branham admitted that he initially observed this behavior at a distance of [a]nywhere from 75 to 100 yards.  Furthermore, even if Robinson and his passengers exhibited nervous behavior at the checkpoint, these actions were not necessarily indicative of criminal behavior.  See Taylor v. Commonwealth, 369 S.E.2d 423, 425 (Va. Ct. App. 1988)(Although in some contexts nervous behavior may be relevant, the mere observation that a traveler is nervous is not indicative of criminal behavior. (citing United States v. Gooding, 695 F.2d 78, 84 (4th Cir. 1982))).  It is also interesting that despite the purpose of the license checkpoint, Branham did not immediately ask Robinson for his license, registration, and proof of insurance.  Instead, he questioned the occupants as to whether they were hiding something and then visually searched the interior of the vehicle.  Although Branham testified that he believed the can which he saw to be an alcoholic beverage, he could not immediately tell that the can was open.[3]  The testimony reveals the can was concealed in the paper bag and was pointing away from Branham when he looked in the window of the vehicle.  In fact, Branham stated, [i]t was not in an open situation.  A brown bag goes up to the tip of the rim of the can.  It wasnt like an open and look.  This is a bag that was molded or formed, you know, like it had been used. From this testimony, it is clear that whether or not the can was an open container of alcohol was not immediately apparent to Branham.  See State v. Beckham, 334 S.C. 302, 317, 513 S.E.2d 606, 613 (1999) (stating the plain view exception to the search warrant requirement requires that:  (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was
immediately apparent to the seizing authorities)(emphasis added). Branham also admitted that he did not normally issue a citation for a violation of the open container law.[4]  Rather, he testified that he uses the open container law as a tool to go further into something.
Taken together, these circumstances indicate that Branhams decision to search was not based on a reasonable suspicion, but rather, a mere hunch of the likelihood of criminal activity.  See United States v. Arvizu, 534 U.S. 266, 274 (2002)(Although an officers reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.) (citations omitted).  Because Branham was not justified in extending the purpose of the license checkpoint into a warrantless search of Robinsons vehicle, we hold the trial judge erred in failing to suppress the cocaine found as result of the illegal search.
Furthermore, we reject any contention that Robinson waived his right to challenge this issue on appeal when he testified, in response to Branhams questions, that he told Branham it was okay to check the vehicle.  Robinson gave this testimony after the suppression hearing during which Branham admitted that he did not ask Robinson for his consent to search.  As a result, the trial judge did not use the testimony as a basis for his decision.  Robinsons counsel also continued to object to the admission of the evidence during the trial.  
Our decision should in no way be construed as limiting the authority of officers to search a vehicle stopped as part of a checkpoint or other traffic stop.  We emphasize that if Trooper Branham had testified that he observed in plain view an open container of alcohol in Robinsons vehicle, he would have been justified in conducting a search of the vehicle.  Cf. State v. Morris, 312 S.C. 116, 118, 439 S.E.2d 291, 292 (Ct. App. 1993) (stating open beer  container observed in plain view by officer at a traffic stop gave officer probable cause to arrest defendant and conduct inventory search of the vehicle which revealed crack cocaine).  Under the specific facts of this case, we hold the search of Robinsons vehicle constituted a Fourth Amendment violation and, thus, the trial judge erred in denying Robinsons motion to suppress.
Accordingly, Robinsons conviction and sentence are
 REVERSED.
BEATTY, SHORT, and WILLIAMS, JJ., concur.

[1]  Robinsons appellate counsel initially filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  After conducting the requisite Anders review, this court ordered re-briefing on the suppression issue.  This issue is now our sole appellate consideration.
[2]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[3]  Section 61-4-110 of the South Carolina Code prohibits a person from having an open container of alcohol in his motor vehicle.  This section provides:   

It is unlawful for a person to have in his possession, except in the trunk or luggage compartment, beer or wine in an open container in a motor vehicle of any kind while located upon the public highways or highway rights of way of this State.  This section must not be construed to prohibit the transporting of beer or wine in a closed container, and this section does not apply to vehicles parked in legal parking places during functions such as sporting events where law enforcement officers are on duty to perform traffic control duties.  A person who violates the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one hundred dollars or imprisoned not more than thirty days.

 For purposes of this section, beer or wine means any beer or wine containing one-half of one percent or more of alcohol by volume.

S.C. Code Ann. § 61-4-110 (Supp. 2006).
[4]  We note that Branhams decision not to issue a citation for an open container violation is inconsequential to our analysis.  See State v. Freiburger, 366 S.C. 125, 133, 620 S.E.2d 737, 741 (2005), cert. denied, 126 S. Ct. 2287 (2006) (holding fact that officer did not arrest defendant for offense which precipitated his seizure and search did not vitiate the reasonableness of the underlying search).