23270

KERSHAW COUNTY BOARD OF EDUCATION, Respondent v.
UNITED STATES GYPSUM COMPANY, Appellant.

(396 S.E. (2d) 369)

Supreme Court

*Edward J. Westbrook* of *Ness, Motley, Loadholt, Richardson & Poole*, Charleston, *for respondent.*

*Steven W. Ouzts* of *Turner, Padget, Graham & Laney, P.A.*, Columbia; *Thomas B. Kenworthy* and *Dennis J. Valenza* of *Morgan, Lewis & Bockius*, Philadelphia, Pa., *for appellant.*

Heard May 23, 1990.

Decided Sept. 17, 1990.

HARWELL, Justice:

This case involves issues pertaining to the discovery and removal of asbestos contaminated materials from several

Kershaw County Schools. From a jury verdict in favor of Respondent Kershaw County Board of Education (Kershaw), United States Gypsum Company (Gypsum) appeals.

## I. FACTUAL BACKGROUND

Between 1956 and 1958, asbestos containing acoustical ceiling plasters known as Audicote and Sabinite, manufactured by Gypsum, were installed in several schools in the Kershaw County School District. Since the time of this installation, considerable development in the asbestos field has resulted in an increased awareness of the dangers to the public from exposure to asbestos. Consequently, in the early 1980's, with the encouragement and assistance of the South Carolina Department of Health and Environmental Control (DHEC), Kershaw began an inspection process of its area schools. After an initial inspection, DHEC recommended removal of the ceiling tiles in three schools, and enclosure and encapsulation as a temporary measure in another school. Subsequently, Kershaw employed "The Survey Group," an environmental consulting firm, which tested and evaluated each of the school buildings at issue and recommended that the acoustical ceiling plaster be removed from the schools. In July 1983, Kershaw began its asbestos removal project, which was completed in the winter of 1984.

Thereafter, Kershaw brought this suit against Gypsum seeking money damages for the costs of inspection, testing, and the removal of the hazardous asbestos material from the school buildings. In its complaint, Kershaw alleged causes of action for negligence, restitution, fraud and misrepresentation, warranty, and a claim for punitive damages. Gypsum's Answer asserted a general denial and several affirmative defenses including the statute of limitations, failure to give notice, laches, waiver, estoppel, misuse of product, no damages, and compliance with state-of-the-art. At the close of all the evidence pertaining to liability, the trial judge dismissed the restitution and fraud causes of action. The trial judge denied Gypsum's directed verdict motions as to the causes of action in negligence and warranty and also as to Kershaw's claim for punitive damages. The jury returned a verdict for $200,000.00 on the negligence cause of action and $25,000 on the warranty cause of action. This appeal follows.

## II. DISCUSSION

### A. ECONOMIC LOSS RULE

Gypsum first argues that the trial court incorrectly ruled that asbestos property damage is recoverable in a tort cause of action for negligence. Gypsum relies on what is commonly referred to as the "economic loss rule." In *Kennedy v. Columbia Lumber & Manufacturing Company,* 299 S.C. 335, 345, 384 S.E. (2d) 730, 736 (1989) we explained the economic loss rule as follows:

> [t]his rule exists to assist in determining whether contract or tort theories are applicable to a given case. Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses. Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract. This is so, the analysis provides, because his losses are more than merely 'economic.'

As we noted in *Kennedy*, the economic loss rule is the general rule that there is no tort liability for a product defect if the damage suffered by a plaintiff is only to the product itself. 299 S.C. at 341, 384 S.E. (2d) at 734. We also noted our difficulty with the economic loss rule generally, and we partially rejected the rule in the residential home building context. *Id.*[1] We have not yet been presented with the question of whether the rule should be so rejected in all contexts, including the commercial arena, and we need not address that issue here, as this case may be disposed of on narrower grounds.

The sole issue which needs to be addressed here is whether the economic loss rule applies when a plaintiff claims and proves "other property damage." We held in *Kennedy* that the rule does not apply where other property damage is proven. 299 S.C. at 341, 384 S.E. (2d) at 734. In addition, we agree with and adopt the reasoning of the recent District Court decision in *City of Greenville v. W.R. Grace & Co.,* 640

---

[1] We retained the "economic loss" rule in the residential home building context only in those instances where a builder violates solely a contractual duty. 299 S.C. at 345, 384 S.E. (2d) at 737.

F.Supp. 559 (D.S.C.1986), *aff'd* 827 F. (2d) 975 (4th Vir. 1987). In *W.R. Grace,* an asbestos case, the District Court held that the economic loss rule does not preclude an action in tort for damages sustained where a defendant's product caused damage to other property of the plaintiff. We therefore need only follow *Kennedy* and *W.R. Grace* in order to dispose of Gypsum's argument here, since Kershaw has alleged and offered proof of other property damage. *See also Town of Hooksett School District v. W.R. Grace & Co.,* 617 F. Supp. 126 (D.N.H.1984); *Cinnaminson Twp. Board of Education v. U.S. Gypsum Co.,* 552 F. Supp. 855 (D.N.J. 1982). Accordingly, we affirm the trial judge's refusal of Gypsum's motion for a directed verdict on the negligence cause of action.

### B. DESTRUCTION OF EVIDENCE

In August 1983, prior to the filing of this lawsuit, Judge John Hamilton Smith issued an order requiring that Gypsum and other asbestos defendants be notified prior to removal of asbestos from the schools at issue. Despite this order, asbestos abatement was conducted in one school, Camden High School, prior to Gypsum being notified and given an opportunity to inspect the building. Counsel for Kershaw informed the trial court that he was not aware that abatement had been completed at Camden High and did not deliberately conceal any information from Gypsum as to the project. Counsel for Gypsum conceded during his questioning of Kershaw's attorney that he was not suggesting that counsel for Kershaw intentionally withheld information from Gypsum regarding the removal.

Gypsum moved for judgment in its favor on the claims related to Camden High School because Kershaw had violated Judge Smith's order by removing asbestos prior to Gypsum's inspection. The trial judge refused this motion, but did include a jury instruction on the destruction of evidence. The trial court permitted Kershaw to explain the circumstances surrounding its failure to notify Gypsum and instructed the jury that when evidence is lost or destroyed by a party an inference may be drawn by the jury that the evidence which was lost or destroyed by that party would have been adverse to that party. *See Welch v. Gibbons,* 211 S.C. 516, 46 S.E. (2d) 147 (1948).

We believe the trial court's decision was proper under the facts of this case. Judge Smith's order was drawn to facilitate discovery in these asbestos cases. Although the order itself contains no provision regarding sanctions, as a discovery order, it is subject to those measures contained in SCRCP Rule 37. The relief sought by Gypsum is contained in Rule 37(b)(2)(C), which provides for failure to comply with a discovery order the sanction of "striking out pleadings or parts thereof, . . . or dismissing the action or proceeding or any part thereof. . . ." A dismissal under Rule 37(b)(2)(C) is not mandatory; rather, the trial court is allowed to make such orders as it deems just under the circumstances, and the selection of a sanction is within the court's discretion. *Dunn v. Dunn*, 298 S.C. 499, 502, 381 S.E. (2d) 734, 735 (1989); *Pioneer Electronics (USA), Inc. v. Cook*, 294 S.C. 135, 137, 363 S.E. (2d) 112, 113 (Ct. App. 1987). Whatever sanction is imposed should serve to protect the rights of discovery provided by the rules. *Downey v. Dixon*, 294 S.C. 42, 45, 362 S.E. (2d) 317, 318 (Ct. App. 1987). The burden is upon the appealing party to show that the trial court abused its discretion. *Dunn v. Dunn*, 298 S.C. at 502, 381 S.E. (2d) at 735. An abuse of discretion may be found where the appellant shows that the conclusion reached by the trial court was without reasonable factual support and resulted in prejudice to the rights of appellant, thereby amounting to an error of law. *Darden v. Witham*, 263 S.C. 183, 209 S.E. (2d) 42 (1974) cited in *Dunn v. Dunn*, 298 S.C. at 502, 381 S.E. (2d) at 735.

We conclude that the trial judge in this case exercised appropriate discretion in denying Gypsum's motion to dismiss the claim pertaining to Camden High School. Such a sanction would have been too severe under the facts of this case. Gypsum has not demonstrated on appeal that the ruling was unreasonable, that it was unduly prejudiced thereby, or that a sanction of dismissal would serve to protect the rules of discovery. We believe this is particularly true in light of the fact that there was no evidence of any intentional misconduct on the part of Kershaw or its counsel. Accordingly, we hold that the procedure followed by the trial court in this case was appropriate.

## C. ADMISSIBILITY OF STATE AND FEDERAL REGULATIONS

Gypsum next asserts it is entitled to a new trial because the trial court improperly allowed Kershaw to admit into evidence a DHEC regulation promulgated in 1982 and a NESHAP[2] regulation first promulgated by the Environmental Protection Agency (EPA) in 1973. Gypsum also asserts error in the admission of testimony concerning these regulations as well as testimony concerning AHERA[3] regulations promulgated in 1987.

The DHEC regulation was offered by Kershaw to show that asbestos is unreasonably dangerous and that Kershaw therefore acted appropriately in removing the material. Specifically, Gypsum objects to a statement contained in the preamble to the DHEC regulation that "the presence in school buildings of asbestos creates a hazard to the health of exposed school children and employees." The NESHAP regulation to which Gypsum objects requires that certain procedures be followed if a building with friable asbestos-containing products is renovated or demolished. These procedures include notice to the EPA of the intention to renovate or demolish and compliance with certain procedures to prevent emissions of particular asbestos material to the "outside air." The AHERA regulations were promulgated after the asbestos removal in this case and describe certain precautionary procedures to be implemented by school authorities if friable asbestos-containing surfacing materials are present in their buildings.

On appeal Gypsum argues that these regulations were hearsay and irrelevant and unfairly prejudiced the jury. Kershaw asserts the admission of the regulations and related testimony was not error since such were admitted for the limited purpose of showing the information on which the school board relied and why it pursued the course of action it did. Kershaw further asserts that the regulations were not hearsay because they were not offered to prove the truth of the matter asserted but to show what Kershaw relied upon in deciding to

---

[2] National Emissions Standards For Hazardous Air Pollutants (Asbestos), 40 C.F.R. sec. 61 *et seq.* (1988).

[3] Asbestos Hazard Emergency Response Act of 1986, Pub.L. No. 99-159, 100 Stat. 2970 (codified at 15 U.S.C. §§ 2641-2654 (Supp. IV 1986).

remove the asbestos. Kershaw also argues that the trial court gave a limiting instruction to the jury. Finally, Kershaw notes that the substance of these regulations was admitted through other sources and therefore, any error was harmless. We agree with Kershaw on all points.

First, the regulations were not used by Kershaw to establish liability on the part of Gypsum. The findings in the DHEC preamble were only discussed outside the presence of the jury and were not argued to the jury. Kershaw offered these regulations to show its reliance on the regulations and the inevitability of the necessity of removal and accordingly the inevitability of damages.

Further, portions of the regulations Gypsum finds objectionable came in through other testimony. For example, an expert witness testified that friable asbestos material in a school environment would pose a threat and that school buildings are of special concern because of the presence of children.

Although Gypsum cites a number of cases for the proposition that these regulations should not have been admitted, none of its cited authority is controlling under the facts of this case. For example, many of the cases Gypsum cites concern the admissibility of reports, not regulations. *See, e.g., Sandel v. State*, 126 S.C. 1, 119 S.E. 776 (1923); *Stack Prudential Insurance Company*, 173 S.C. 81, 174 S.E. 911(1934); *Peagler v. Atlantic Coastline R.R. Co.*, 234 S.C. 140, 107 S.E. (2d) 15 (1959). Additional cases cited by Gypsum are inapplicable because they involve reports or regulations offered to prove negligence, which was not the purpose here; other cases address reports found to be unreliable. We are not persuaded by these authorities as all are distinguishable from the facts of this case. We hold that admission of the regulations and related testimony in this case did not constitute reversible error.

## D. ADMISSIBILITY OF THE SARANAC DOCUMENTS

The "Saranac documents" are historical documents which relate to studies, interim reports, and a final report issued in 1952, recording the results of experiments involving the exposure of various animals to the asbestos product produced

by Gypsum. Gypsum and several other sponsors allegedly underwrote the project. These documents tend to indicate that the studies showed a link between asbestos and cancer.

Gypsum challenges the admissibility of the documents surrounding the Saranac studies because the documents were unauthenticated and irrelevant. First, we agree with the trial court's determination of the authenticity of the Saranac documents. South Carolina follows the principle articulated in Fed.R.Evidence 901(b)(4) which permits a finding of authenticity based on the "appearance, contents, substance, [and] internal patterns" of documents. The authenticity of a document:

> may be established by circumstantial evidence if its tenor, subject matter, and the parties between whom it purports to have passed make it fairly fit into an approved course of conduct, and manifests the probability that the subject-matters of its contents was known only to the apparent writer and the person to whom it was written ...

*State v. Hightower*, 221 S.C. 91, 105, 69 S.E. (2d) 363, 370 (1952).

Prior to his ruling, the trial judge examined each of the documents submitted by Kershaw. An examination of these documents establishes that the documents relate to the same subject, are internally consistent, often refer to or answer each other, frequently bear the senders' letterhead and fit together in a fashion which would be impossible to fabricate.

Additionally, we hold that the documents were relevant. The determination of relevancy is within the discretion of the trial judge. *State v. Jeffcoat*, 279 S.C. 167, 303 S.E. (2d) 855 (1933). The Saranac documents were admissible not only to show what Gypsum could have known about asbestos and cancer, but what it actually did know. *See Valori v. Johns-Manville Corporation*, No. 82-2686, 1985 WL 6074 (D.N.J. Dec. 11, 1985) ("Saranac Documents" held relevant to question of whether asbestos manufacturer had knowledge of hazardous nature of product.) Although the parties were entitled to argue different interpretations of the meaning of the documents, the documents themselves were properly admitted as relevant evidence.

## III. CONCLUSION

The trial court properly allowed Kershaw to proceed on its negligence cause of action as it was not precluded, under the facts of this case, by the economic loss rule. The trial judge also properly refused Gypsum's request for the discovery related sanction of dismissal of Kershaw's claims relating to Camden High School. Finally, the trial court properly admitted the DHEC and NESHAP regulations, testimony concerning the AHERA regulations, and the Saranac documents. Accordingly, the decision of the trial court is

Affirmed.

GREGORY, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.

