665 S.E.2d 247

**The STATE, Respondent,**

v.

**Elbert W. BREEZE, Appellant.**

**No. 4430.**

Court of Appeals of South Carolina.

Submitted June 2, 2008.

Decided July 23, 2008.

Appellate Defender Eleanor Duffy Cleary, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, Assistant Attorney General Christina J. Catoe, Office of the Attorney General, all of Columbia; and Solicitor Robert Mills Ariail of Greenville, for Respondent.

WILLIAMS, J.:

In this criminal case, we affirm the trial court's determination that Elbert Breeze (Breeze) properly waived his *Miranda*[1] rights. We also affirm the trial court's decision not to charge the jury that an adverse inference could be suggested from the State's failure to preserve the marijuana.

## FACTS

Officer Michael Collier (Collier) of the South Carolina Highway Patrol was observing a driver's license checkpoint in Greenville County, South Carolina. Collier observed Breeze approach the checkpoint, abruptly stop, and jerk his car into a driveway without using a turn signal. Collier approached Breeze and requested Breeze provide his driver's license. In response to this request, Breeze "took off running."

Collier chased Breeze, pushed him to the ground, and ordered him to remain down. Breeze got up, and Collier responded by using pepper spray on him. Breeze still managed to get up and run. Collier again chased and pushed Breeze to the ground. This series of events occurred a few more times until additional officers arrived to assist Collier. Breeze was once again sprayed with pepper spray, subdued, and arrested. After Breeze was placed in handcuffs, officers offset the effects of the pepper spray by decontaminating Breeze with an aerosol water bottle.

After Breeze's arrest, Officer Johnny Black (Black) of the South Carolina Highway Patrol informed Breeze of his *Miranda* rights. Subsequently, Breeze was searched based on a search incident to the arrest. This search revealed a substance, which was later tested to be marijuana. The total weight of the marijuana was 394.34 grams. After being informed of his *Miranda* rights, Breeze admitted to the officer

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the marijuana belonged to him. Breeze stated he ran because he "had five bags of marijuana in his pockets . . . ."

Breeze argued he did not freely and voluntarily waive his right to remain silent. The trial court found the State had proved Breeze "voluntarily and intelligently gave up his rights and that his statement was voluntary."

Prior to trial, the State informed Breeze the marijuana had been destroyed. Breeze asked the trial judge to charge the jury with the following: "When a party loses or destroys evidence, an inference may be drawn that the destroyed or lost evidence would have been adverse to that party." The trial judge denied this request.

Following a jury trial, Breeze was convicted of possession of marijuana with intent to distribute and resisting arrest. Breeze was sentenced to seven years for the possession with intent to distribute charge and one year for the resisting arrest charge. The sentences were to run consecutively. This appeal follows.

## STANDARD OF REVIEW

In criminal cases, this Court reviews errors of law only. *State v. Miller*, 375 S.C. 370, 378, 652 S.E.2d 444, 448 (Ct.App. 2007). Thus, we are bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

Breeze makes three arguments on appeal. First, he argues the trial court committed error when it refused to suppress his statement to the police. Second, he claims the trial court committed error by not allowing him to argue that the destruction of the marijuana was a violation of his right to a fair trial under the Due Process Clause. Third, Breeze contends the trial court erred in refusing to instruct the jury that an adverse inference could be made from the State's failure to produce the marijuana. We address each argument in turn.

### A. Breeze's statement

Breeze initially contends the trial court improperly determined his statement was voluntary. We disagree.

The process for ascertaining whether a statement is voluntary is bifurcated because the process involves determinations by both the trial judge and the jury. *Id.* at 378–79, 652 S.E.2d at 448. Initially, the trial judge must conduct an evidentiary hearing [2] in the absence of the jury. *Id.* At this phase of the proceedings, the State must show the statement was voluntarily made by a preponderance of the evidence. *Id.* If the trial court determines the State has met its burden, the statement is submitted to the jury where its voluntariness must be established beyond a reasonable doubt. *Id.*

Our role when reviewing a trial court's ruling concerning the admissibility of a statement upon proof of its voluntariness is not to reevaluate the facts based on our view of the preponderance of the evidence. *Id.* Rather, our standard of review is limited to determining whether the trial court's ruling is supported by any evidence. *Id.* Thus, on appeal the trial court's findings as to the voluntariness of a statement will not be reversed unless they are so erroneous as to show an abuse of discretion. *Id.* With this is mind, we now turn our attention to the trial court's determination that Breeze's statement was voluntary.

The Fifth Amendment to the United States Constitution provides, "No person shall be ... compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V.[3] The Fifth Amendment's right against self-incrimination was made applicable to the individual states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States.").

Based on the Fifth Amendment's protection against self-incrimination, the United States Supreme Court announced, "[T]he prosecution may not use statements, whether exculpa-

---

**2.** This hearing is commonly referred to as a *Jackson v. Denno* hearing based upon the United States Supreme Court's decision in that case. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**3.** The South Carolina Constitution has a similar provision, which provides that no person shall "be compelled in any criminal case to be a witness against himself." S.C. Const. art. I, § 12.

tory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards . . . ." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. Before the accused is subjected to custodial interrogation, he or she must be informed of the right to remain silent; any statement made may be used as evidence against him or her; the right to the presence of an attorney; and if he or she cannot afford an attorney one will be appointed prior to questioning. *State v. Kennedy,* 325 S.C. 295, 303, 479 S.E.2d 838, 842 (Ct.App.1996).

However, the Fifth Amendment does not act to provide a uniform prohibition against the taking of any and all statements made by a suspect to law enforcement officials. *Miller,* 375 S.C. at 379–80, 652 S.E.2d at 449. Volunteered exculpatory or inculpatory statements arising from custodial interrogation are not barred by the Fifth Amendment. *Id.* The test of voluntariness is whether a suspect's will was overborne by the circumstances surrounding the given statement. *Id.* at 384, 652 S.E.2d at 451. In making this determination, the trial court must examine the totality of the circumstances surrounding the statement. *Id.*

In the present case, Breeze maintains his statement was not voluntary because his statement occurred shortly after a physical altercation caused by his resisting arrest. At the *Jackson v. Denno* hearing, the trial court heard testimony from Officer Black that Breeze acknowledged his understanding of his rights by an "affirmative nod of the head and grunted, uh-huh." Black further testified Breeze was informed he had the option to answer any or all the questions or answer none of the questions. When asked whether he wished to cooperate, Breeze once again nodded his head up and down and grunted "uh-huh."

Black stated Breeze admitted the marijuana belonged to him. According to Black, Breeze stated he ran because he "had five bags of marijuana in his pockets." Black added Breeze was not threatened in any way to make a statement. Additionally, prior to being questioned, the officers offset the effects of the pepper spray by decontaminating Breeze with an aerosol water bottle.

Conversely, Breeze did not contradict Black's testimony with respect to the issue of whether the statement was voluntary. Breeze did not state the pepper spray made him less capable of understanding and waving his *Miranda* rights. Nor did Breeze assert he was coerced into making the statements. Faced with Black's undisputed testimony the trial court concluded the State had showed that Breeze voluntarily made the statement.

Based upon Black's testimony, we cannot conclude the trial court's ruling is unsupported by any evidence. *See Miller*, 375 S.C. at 387–88, 652 S.E.2d at 453 (upholding the trial court's determination of voluntariness because the trial court had the opportunity to listen to the testimony, assess the demeanor and credibility of witnesses and weigh evidence accordingly when defendant's attorney testified defendant was coerced into making a statement by a promise of a lenient sentence but where three law enforcement officials and an assistant attorney general denied any promise of lenience). We next turn our attention to Breeze's second and third issues on appeal.

## B. Due Process and jury charge

Prior to trial, Breeze was informed the marijuana in question was inadvertently destroyed. Due to this destruction of evidence, Breeze contends the trial court's decision not to allow him to argue the evidence was destroyed as a result of the State's mistake was a violation of his right to a fair trial under the Due Process Clause. Additionally, Breeze contends the trial court erred in refusing to instruct the jury that an adverse inference could be drawn from the State's failure to produce the marijuana. We disagree.

The State does not have an absolute duty to safeguard potentially useful evidence that might vindicate a defendant. *State v. Cheeseboro*, 346 S.C. 526, 538–39, 552 S.E.2d 300, 307 (2001). "To establish a due process violation, a defendant must demonstrate (1) that the State destroyed the evidence in bad faith, or (2) that the evidence possessed an exculpatory value apparent before the evidence was destroyed and the defendant cannot obtain other evidence of comparable value by other means." *Id.*

With respect to the bad faith prong, we believe the following facts demonstrate the State's actions were not in bad faith. Originally, Breeze's trial was scheduled for January 15, 2002. Breeze failed to appear, and as a result, a bench warrant for his arrest was issued. As a product of this warrant, when law enforcement officials checked the status of the case, it appeared as "disposed." It is the policy of the highway patrol to destroy drugs when a case is listed as disposed.

During Black's direct examination, the following two questions were proposed regarding the destruction of the marijuana: (1) "Does the highway patrol have a destruction of marijuana policy?" and (2) "[W]as that destruction policy followed?" Black answered in the affirmative to both questions. On cross-examination, Breeze asked, "Trooper Black, where is the marijuana?" Black replied, "It was destroyed pertinent to patrol policy." This was the extent of the testimony the jury heard regarding the destruction of the marijuana.

The foregoing demonstrates the State's actions were not in bad faith but rather an inadvertent mistake. We also note Breeze's actions, by not attending his first trial, led to his case being marked as disposed, which resulted in the destruction of the marijuana. Additionally, Breeze concedes the marijuana was not destroyed in bad faith. (Appellant's Br. 11)

Breeze may establish his Due Process rights were violated if he can demonstrate the destroyed evidence possessed an exculpatory value that was apparent before the evidence was destroyed and that he cannot obtain this evidence by other means. *Cheeseboro*, 346 S.C. at 538–39, 552 S.E.2d at 307. Here, the destroyed evidence Breeze complains of was inculpatory rather than exculpatory.

The substance found on Breeze was field tested by an officer who stated that in his opinion it was marijuana. Prior to its destruction, an expert qualified to analyze marijuana testified the substance obtained on Breeze was marijuana. Thus, the evidence destroyed was inculpatory rather than exculpatory. Moreover, Breeze also admits he failed to demonstrate the marijuana had any exculpatory value. (Appellant's Br. 11) Therefore, Breeze has failed to establish that the destruction of the marijuana violated his Due Process rights.

Additionally, contrary to Breeze's claims, the trial court did not prohibit Breeze from arguing the evidence was destroyed as a result of the State's mistake. The State provided Breeze with a "Destruction of Evidence" form. Breeze argued he should have been provided this form in response to his discovery request. Breeze asked the trial court to issue sanctions against the State by not allowing the State to mention the bench warrant or grant a mistrial.

The State responded to this argument by explaining the form was not disclosed during discovery because the State did not intend to introduce the form at trial. The State intended to limit testimony regarding the destruction of the marijuana to the effect that the drugs were destroyed. Breeze requested the trial court grant him permission to ask the testifying officers about the procedures relating to the destruction of the evidence and the State not be allowed to mention the bench warrant.

The trial court ruled if Breeze decided to entertain this argument, then the State would be permitted to go into the bench warrant because Breeze had opened the door. The trial court reasoned if Breeze inquired into the procedures utilized in destroying evidence, the State would necessarily have to examine why the marijuana was destroyed in Breeze's case. Namely, the marijuana was destroyed because the case was listed as disposed, which was the result of the bench warrant.

The trial court did not prohibit Breeze from commenting on the State's mistake. The trial court conditioned Breeze's inquiry into the destroyed drugs on the fact the State had a right to introduce why the case was listed as disposed. Consequently, Breeze's contention that the trial court prevented him from making an argument regarding the destroyed marijuana fails.

Along this same line of reasoning, during the jury charge conference, Breeze requested the jury be charged that an adverse inference could be drawn against the State for failing to produce the marijuana. The trial court denied this request.

■ Generally, the trial judge is required to charge only the current and correct law of South Carolina. *State v. Burkhart*, 350 S.C. 252, 261, 565 S.E.2d 298, 302–03 (2002).

To warrant reversal, a trial judge's refusal to give a requested charge must be both erroneous and prejudicial. *Id.*

In support for his argument, Breeze cites *Kershaw County Board of Education v. U.S. Gypsum Co.*, 302 S.C. 390, 396 S.E.2d 369 (1990).[4] However, the case cited is a civil case and is, therefore, clearly distinguishable on that ground to this criminal case. *See State v. Simmons*, 267 S.C. 479, 482, 229 S.E.2d 597, 598 (1976) ("Even greater caution should be exercised by the courts in permitting an adverse inference comment in criminal proceedings than in civil proceedings."). Even if we assume, without deciding, the trial court's failure to give the requested charge was erroneous, we conclude any such error did not result in prejudice.

■ According to testimony, Breeze ran from the police because he "had five bags of marijuana in his pockets." Two officers testified that the substance found on Breeze was marijuana. Additionally, Breeze admitted the marijuana belonged to him. Based upon these facts, we are convinced any error was harmless beyond a reasonable doubt. *Burkhart*, 350 S.C. at 261, 565 S.E.2d at 302–03 (To warrant reversal, a trial judge's refusal to give a requested charge must be both erroneous and prejudicial.).

## CONCLUSION

Accordingly, the trial court's decision is
**AFFIRMED.**[5]

THOMAS and PIEPER, JJ., concur.

---

4. Breeze requested the jury be charged as follows: "When a party loses or destroys evidence, an inference may be drawn that the destroyed or lost evidence would have been adverse to that party." This language is remarkably similar to the language used in *Kershaw County Board of Education.* 302 S.C. 390, 394, 396 S.E.2d 369, 372 (1990) ("[W]hen evidence is lost or destroyed by a party an inference may be drawn by the jury that the evidence which was lost or destroyed by that party would have been adverse to that party.").

5. We decide this case without oral arguments pursuant to Rule 215, SCACR.