The STATE, Respondent,

v.

Justin MCBRIDE, Appellant.

Appellate Case No. 2013–002391
Opinion No. 5381

Court of Appeals of South Carolina.

Heard November 10, 2015
Filed February 17, 2016
Withdrawn, Substituted and Refiled May 25, 2016

380

382

Wendy Raina Johnson Keefer, of Keefer & Keefer, LLC, Joshua Preston Stokes, of McCoy & Stokes, LLC, and Adam Owensby, of Carolina Firm, LLC, all of Charleston, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia, and Ernest Adolphus Finney, III, of Sumter, for Respondent.

SHORT, J.:

Justin McBride appeals his conviction for first-degree criminal sexual conduct with a minor, arguing the following: (1) the trial court lacked subject matter jurisdiction over McBride because he was a juvenile [1]; (2) numerous evidentiary and jury charge issues; (3) the evidence presented was insufficient to prove the required elements of the crime; and (4) the trial court erred in excluding only a portion of McBride's statement. We affirm. [2]

## BACKGROUND FACTS

The victim [3] testified that on June 21, 2010, she was attending summer school. When she arrived home on the school bus, her mother was not there. The victim went to her aunt's house next door. [4] The victim testified her cousin, McBride, was home alone and let her in. The victim sat on the couch while McBride went into the kitchen. When McBride returned, the victim asked him to turn the television off. The victim testified McBride turned the television off, then "took out his manhood.

---

1. McBride was sixteen years old at the time of the alleged assault.

2. By letter received November 5, 2005, McBride requested the court delay disposition of his case and remove counsel. McBride stated, "Elizabeth Tisdale has abandoned me and my issues ...." During oral argument, McBride's private counsel informed the court that Tisdale was McBride's girlfriend and not an attorney, and McBride was prepared to go forward.

3. The victim was nine years old at the time of the assault and thirteen years old at the time of trial.

4. McBride's mother is the victim's father's sister.

And then he told [me] to jerk it. And he grabbed my hand, and put my hand on his manhood. And I jerk it away from him. And then that's when he is going to grab my head, and pull it down to make me put my mouth on it." The victim next testified she pushed McBride away from her, "[a]nd that's when the white stuff and clear stuff came out of his manhood. It was in my mouth and on my shirt. And I ran in the bathroom." The victim spit into the sink, wiped her shirt with tissue, and threw the tissue away. The victim testified she was wearing a black shirt and her "birthday pants that [her] grandmother gave [her]." According to the victim, when she returned to the living room, McBride was spraying the room with "man's perfume." The victim testified she ran to the front door, was blocked by McBride, ran to the back door, and went home.

The victim's mother was home by then and opened the door when the victim knocked. The victim originally denied anything was wrong. The mother smelled the "man's perfume" on the victim and saw a deodorant stain on the victim's shirt. According to the victim, she had deodorant on the back of her shirt from where McBride had his arm around her neck when he forced her to touch him. The victim testified she spoke to Detective Wilma Trena Hamlet of the Kingstree Police Department and two other officers within ten to fifteen minutes of returning home.

Hamlet testified minor inconsistencies between the victim's first and second statements included which door she ran out of when exiting McBride's house. Hamlet also admitted that no deodorant was collected from McBride.

The victim's mother testified that on the day in question, when she arrived home, the victim was not there, but she arrived shortly thereafter. As the victim passed her in the entryway, the mother smelled men's cologne and saw the stain on the victim's shirt. After questioning the victim, the mother went next door and questioned McBride. She returned home and called her husband, her sister (the sister), and McBride's mother. The sister eventually called the police.

The sister testified she arrived at the victim's house after receiving the telephone call and confronted McBride after the victim told her what happened. According to the sister,

McBride said he did not mean to do it, and "tr[ied] to compromise with [her]." The sister described it as McBride's confession.

At the close of the evidence, McBride moved for a directed verdict, arguing there was no testimony of penetration of the victim's mouth. The court reporter replayed the testimony of the victim's cross-examination, and the trial court denied the motion, finding direct and circumstantial evidence. The jury convicted McBride of first degree criminal sexual conduct. This appeal follows.

## STANDARD OF REVIEW

In criminal cases, this court reviews errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). Thus, on review, the court is limited to determining whether the trial court abused its discretion. *Id.* An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). "This [c]ourt does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

### I. Subject Matter Jurisdiction

McBride argues the circuit court lacked subject matter jurisdiction to hear the case because he was sixteen at the time of the alleged crime and the case was not properly transferred to the court of general sessions. We disagree.

The State argues this issue is not preserved for our review and is a matter of personal jurisdiction, not subject matter jurisdiction. We agree. This issue was not raised to the trial court; thus, unless it involves subject matter jurisdiction, it must have been raised to and ruled upon by the trial court to be preserved for appellate review. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) (stating an issue must be both raised to and ruled upon by the trial court in order to be preserved for appellate review); *Ex parte Cannon*, 385 S.C. 643, 654, 685 S.E.2d 814, 820 (Ct. App. 2009) ("Lack of

subject matter jurisdiction can be raised at any time, even for the first time on appeal, by a party or by the court."). Because the circuit court has the power to hear criminal cases, we find the issue was not one of subject matter jurisdiction. *See State v. Gentry*, 363 S.C. 93, 100, 610 S.E.2d 494, 498 (2005) (explaining issues relating to subject matter jurisdiction may be raised at any time and clarifying a court's subject matter jurisdiction is that court's power "to hear and determine cases of the general class to which the proceedings in question belong"). Thus, McBride has not preserved the issue for appellate review.

## II. Evidentiary Rulings and Jury Charges

McBride argues numerous evidentiary and jury charge errors relating to the loss of the victim's clothing by the investigating police department, the admission of photographs, and the limitation of his cross-examination regarding the Department's investigation of the victim. We find no reversible errors.

### A. The Victim's Shirt

McBride argues the trial court erred in limiting his ability to cross-examine witnesses regarding the victim's shirt, which law enforcement lost. Further, McBride maintains his due process rights were violated by the loss of the victim's shirt. McBride also argues the trial court erred in denying his motion for an adverse inference jury charge on the issue. We affirm.

The mother testified she bagged the victim's clothing and three days later, she took it with the victim to the victim's forensic and medical examination. The facility double-bagged the clothing, labeled the bag, and instructed the mother to deliver it to the police department, which she did later that day. The mother testified she gave it to a bald man at the department.

Lieutenant Thomas McCrea, of the Kingstree Police Department, testified the only bald employee of the department was the evidence custodian, Sergeant Grant Huckabee. McCrea testified only Huckabee and the Chief of Police had access to evidence at the department and both had left the

department. McCrea testified the mother came to the department to retrieve the clothing and, at that time, McCrea's understanding based on protocol was that the clothing would have been at the South Carolina Law Enforcement Division (SLED) for testing. However, he had never seen a report indicating the clothing was sent to SLED. He admitted the department did not have the clothing, an intake sheet reporting receiving it, or an analysis from SLED, and that SLED had no record of receiving it. He also admitted other evidence in the department had been lost during Huckabee's tenure with the department.

The allegedly improper limitation of cross-examination arose during McCrea's cross-examination. McBride asked, "Do you know why Officer Huckabee left the department? .... Can you disclose to the court why?" The State objected on the ground of relevance, and the trial court sustained the objection. McBride made no further attempt to cross-examine McCrea regarding the lost shirt. Furthermore, McBride did not raise the due process argument arising from the limitation of cross-examination that he now raises on appeal. Thus, the issue is not preserved for appellate review. *See Dunbar*, 356 S.C. at 142, 587 S.E.2d at 693–94 (stating an issue must be both raised to and ruled upon by the trial court in order to be preserved for appellate review).

■ McBride argues his due process rights were violated because the shirt was lost. We disagree.

Relying on *State v. Breeze*, 379 S.C. 538, 665 S.E.2d 247 (Ct. App. 2008), the trial court found no due process violation because there was no bad faith by the State and no evidence the lost clothing possessed any exculpatory value. In *Breeze*, the defendant was convicted of possession of marijuana with intent to distribute. *Id.* at 542, 665 S.E.2d at 249. Prior to trial, the State informed the defendant the marijuana had been destroyed. *Id.* Breeze argued the trial court erred in finding the lost marijuana was not a due process violation and did not entitle him to an adverse inference jury charge. *Id.* at 545, 665 S.E.2d at 251. This court disagreed, finding the State did not have an absolute duty to safeguard potentially useful evidence that might vindicate a defendant. *Id.*

The court in *Breeze* stated, " 'To establish a due process violation, a defendant must demonstrate (1) that the State destroyed the evidence in bad faith, or (2) that the evidence possessed an exculpatory value apparent before the evidence was destroyed and the defendant cannot obtain other evidence of comparable value by other means.' " *Id.* (quoting *State v. Cheeseboro*, 346 S.C. 526, 538–39, 552 S.E.2d 300, 307 (2001)). The court found no bad faith by the State where the marijuana was inadvertently destroyed because the status of the case listed it as disposed and the policy of the department was to destroy drugs when a case was disposed. *Id.* at 546, 665 S.E.2d at 251; *see State v. Reaves*, 414 S.C. 118, 129, 777 S.E.2d 213, 218 (2015) (finding no bad faith despite acknowledging "deeply troubling aspects" of the police investigation, including lost clothing, jewelry, and documents). *But see Reaves*, 414 S.C. at 129, 777 S.E.2d at 218 (noting that although the defendant was disadvantaged by the lost evidence, he forcefully cross-examined the police and the trial court instructed the jury on adverse inference).

█ The trial court in this case likewise found McBride did not show bad faith by the State in the loss of the shirt. We agree. Appellate courts give the trial court's finding great deference on appeal and review the findings under a clearly erroneous standard. *See e.g., State v. Scott*, 406 S.C. 108, 113, 749 S.E.2d 160, 163 (Ct. App. 2013) (reviewing factual findings regarding purposeful discrimination during jury selection in a pre-trial hearing).

As to whether the shirt possessed exculpatory value, we agree with the State that "it is speculative at best that the shirt contained exculpatory value." *See Breeze*, 379 S.C. at 546, 665 S.E.2d at 251–52 (finding the evidence was inculpatory rather than exculpatory because it field tested for marijuana, an officer opined it was marijuana, and an expert tested it prior to its destruction and testified it was marijuana). Because McBride failed to meet either prong necessary to establish a due process violation arising from evidence lost by the State, we find no due process violation in the lost shirt.

█ We also find no error by the trial court in denying McBride's request for an adverse inference jury charge. Prior

to the trial court's jury charge, McBride requested the following charge:

> In evaluating a case, you may consider the lack of evidence presented by the State. Th[e]re are allegations that evidence has been lost or destroyed by the State in this case. We refer to this concept as spoliation or destruction of evidence. The State not only has the burden of proof of guilt, but it also has the burden of safeguarding evidence it possessed that could establish that the defendant is innocent or that could raise issues of doubt about his guilt.

> When evidence is lost or destroyed by a party, you may infer that the evidence that was lost or destroyed would have been adverse to that party. If you find first that evidence was spoiled or destroyed, and if you further find that the evidence could help establish the innocence of the defendant or create doubt about whether or not he is guilty, you may then consider those facts in deciding whether or not the State has met its burden of proof.

The trial court declined to instruct the jury as requested. The trial court in *Breeze* likewise denied Breeze's request to instruct the jury that an adverse inference could be drawn from the State's failure to produce the marijuana. *Id.* at 545–48, 665 S.E.2d at 251–53.

In this case, we find there was no error by the trial court in declining the charge. "In general, the trial judge is required to charge only the current and correct law of South Carolina." *State v. Burkhart*, 350 S.C. 252, 261, 565 S.E.2d 298, 302–03 (2002). To warrant reversal, a trial judge's refusal to give a requested charge must be both erroneous and prejudicial. *Id.* The requested charge in this case included an instruction that permitted the jury to "infer that the evidence that was lost or destroyed would have been adverse to that party."

Adverse inference charges are rarely permitted in criminal cases. *See Reaves*, 414 S.C. at 128 n.5, 777 S.E.2d at 218 n.5 (noting "adverse inference charge[s] based on missing evidence ... ha[ve] been limited to civil cases in South Carolina"); *State v. Batson*, 261 S.C. 128, 138, 198 S.E.2d 517, 522 (1973) (entertaining "grave doubt as to the propriety, in a criminal case, of the rule of an adverse inference from the

failure to produce a material witness"); *id.* (stating "a charge of this proposition to a jury on . . . behalf of either the State or the defense is not warranted except under most unusual circumstances"). We find no error by the trial court in denying the request for the jury charge.

In summary, we find McBride failed to preserve the issue regarding his inability to cross-examine McCrea. We also find no due process violation by the State. Finally, we affirm the trial court's denial of McBride's request for an adverse inference jury charge.

### B. Missing Photographs

▆▆▆ McBride next argues the trial court erred in admitting two color photographs of the victim's shirt, which he did not receive prior to trial. We disagree.

During redirect examination of the victim, she testified she got a stain on her shirt after McBride pulled her head to his penis. Without the jury present, McBride moved to exclude two color photographs of the shirt the State was preparing to enter into evidence. McBride's counsel argued the documents produced by the State prior to trial were dark and illegible, but during trial, the State was attempting to introduce legible, color photographs. McBride's counsel explained he took this case on appointment after McBride's original counsel was disbarred. Trial counsel made a separate Rule 5, SCRCrimP, request and discovery motion and was never provided the color photographs. Trial counsel did not see the color photographs until just prior to making the motion. Trial counsel acknowledged he did not believe it was an intentional act by the State; rather, he accepted it was due to a copy machine. However, trial counsel argued it "dynamically change[d]" his representation of McBride, and it "could have . . . very well have pushed us along the line to . . . see if there was anything that could have been worked out."

The solicitor informed the court that the illegible copies were given to the solicitor's office by the Kingstree Police Department, but she knew what they depicted. In the State's discovery responses, the solicitor "duplicated the pictures as they were given" to her. She also notified McBride's first counsel that there were pictures and a disk available for

inspection. She stated the incident report provided to McBride referenced a white stain on the shirt. She argued, "it was incumbent upon the defense to ... request better copies or request to be permitted to go to the Kingstree Police Department and see the photographs." The solicitor argued the State had complied with Rule 5. Finally, she informed the trial court she also received the color photographs the morning of trial.

The court weighed the extent of the State's compliance with Rule 5 with the obligation of the defense to investigate further when it received illegible photographs. Although "bother[ed] ... immensely[,]" the court admitted the photographs, finding that the State did not violate Rule 5 and there was no prosecutorial misconduct. The court relied on the State's discovery Response 7, stating there were photographs that could be inspected.

Subject to McBride's previous objections, the State introduced the color photographs during Hamlet's testimony, and she testified the photographs depicted the victim's shirt and the discoloration on the left shoulder, which the victim claimed was McBride's deodorant. On appeal, McBride argues the trial court erred in balancing the State's compliance with Rule 5 and McBride's rights, stating the proper test for violations of Rule 5 is whether good cause has been shown.

Rule 5, SCRCrimP, governs disclosure in criminal cases. Rule 5(a)(1)(C), SCRCrimP, provides in part: "Upon request of the defendant the prosecution shall permit the defendant to inspect and copy ... photographs ... which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution ...." The decision by the trial judge regarding the admissibility of evidence for failure to comply with disclosure rules will not be reversed absent an abuse of discretion. *State v. King*, 367 S.C. 131, 136, 623 S.E.2d 865, 867 (Ct. App. 2005). *See State v. Davis*, 309 S.C. 56, 63, 419 S.E.2d 820, 825 (Ct. App. 1992) ("Sanctions for noncompliance with disclosure rules are within the discretion of the trial judge and will not be disturbed absent an abuse of discretion.").

We find no reversible error in the trial court's ruling regarding McBride's motion to suppress the color photographs

because the solicitor notified McBride that there were pictures and a disk available for inspection. *See State v. Newell*, 303 S.C. 471, 475–76, 401 S.E.2d 420, 423 (Ct. App. 1991) (finding the State substantially complied with Rule 5 by making its file available for inspection by the defendant); *see also State v. Davis*, 309 S.C. 56, 63, 419 S.E.2d 820, 825 (Ct. App. 1992) (finding no abuse of discretion in trial court's denial of a motion to suppress following the late disclosure of defendant's statements where defendant "was permitted to view and copy the State's file" and defendant "never requested a continuance or recess in order to review the file").

## C. Investigation of the Victim

McBride argues the trial court erred in refusing to allow him to cross-examine law enforcement witnesses regarding whether they requested the victim submit to a polygraph examination. We disagree.

During the pre-trial hearing, McBride moved to be permitted to cross-examine law enforcement regarding its ability, under section 16–3–750 of the South Carolina Code, to request a victim submit to a polygraph examination. McBride argued he was entitled to ask law enforcement officers if they took "that additional step to verify whether this was an accurate allegation." The court denied the motion. During cross-examination of Hamlet, McBride questioned her regarding section 16–3–750. The court sustained the State's objection. At the close of evidence, McBride moved for a mistrial based on the issue. The court denied the motion.

Section 16–3–750 provides as follows:

A law enforcement officer, prosecuting officer, or other governmental official may request that the victim of an alleged criminal sexual conduct offense as defined under federal or South Carolina law submit to a polygraph examination or other truth telling device as part of the investigation, charging, or prosecution of the offense if the credibility of the victim is at issue; however, the officer or official must not require the victim to submit to a polygraph examination or other truth telling device as a condition for proceeding

with the investigation, charging, or prosecution of the offense.

S.C. Code Ann. § 16–3–750 (2015).

▮ "The admission or exclusion of evidence rests in the sound discretion of the trial judge, and will not be reversed on appeal absent an abuse of discretion." *State v. Johnson*, 413 S.C. 458, 466, 776 S.E.2d 367, 371 (2015). "The general rule is that no mention of a polygraph test should be placed before the jury." *State v. Johnson*, 376 S.C. 8, 11, 654 S.E.2d 835, 836 (2007). We find no error by the trial court. McBride presented no evidence challenging the credibility of the victim; thus, the statute did not apply.

## D. Section 16–3–657

▮ McBride also argued the trial court erred in charging section 16–3–657 of the South Carolina Code, maintaining the jury charge shifted the burden of proof and violated his due process rights. At the pre-trial hearing, the court found the statute was not unconstitutional or in violation of McBride's due process rights. McBride also included the issue in his motion for a mistrial, which the court denied. The court charged the jury, stating "[t]he testimony of victims in criminal sexual conduct cases need not be corroborated under the laws of this state." In light of our supreme court's recent opinion in *State v. Stukes*, Op. No. 27633, 416 S.C. 493, 500–03, 787 S.E.2d 480, 483, 2016 WL 2343039 (S.C. Sup. Ct. filed May 4, 2016) (Shearouse Adv. Sh. No. 18 at 25), we agree the charge was erroneous. However, we find the error was harmless.

In *Stukes*, the victim testified she had been sexually assaulted and a DNA profile matched Stukes. *Id.* at 26, 416 S.C. at 496, 787 S.E.2d at 481. Stukes claimed he had consensual sex with the victim. *Id.* At trial, Stukes objected to the trial court charging the jury pursuant to section 16–3–657. *Id.* at 27, 416 S.C. at 501, 787 S.E.2d at 484; *see* S.C. Code Ann. § 16–3–657 (2015) ("The testimony of the [criminal sexual conduct] victim need not be corroborated ...."). On appeal, our supreme court found the "charge is confusing and violative of the constitutional provision prohibiting courts from commenting to the jury on the facts of a case." *Id.* at 29, 416 S.C. at 499–500,

787 S.E.2d at 483. The court found the error was not harmless beyond a reasonable doubt because the case "hinged on credibility. Victim said it was rape; [Stukes] said it was consensual." *Id.* at 30, 416 S.C. at 500, 787 S.E.2d at 483.

Here, although we find the jury charge was error, we find it was harmless beyond a reasonable doubt. Unlike the situation in *Stukes*, there was corroborating evidence in this case. The victim's mother testified she smelled men's cologne and saw the stain on the victim's shirt. The mother's sister testified she confronted McBride and he said he did not mean to do it, and "tr[ied] to compromise with [her]." The sister described it as McBride's confession. Thus, although the jury was erroneously charged section 16–3–657, we find the error was harmless beyond a reasonable doubt.

### III. Directed Verdict

McBride argues the trial court erred in denying his motion for a directed verdict. We disagree.

When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster*, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002). On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *State v. Walker*, 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this court must find the case was properly submitted to the jury. *State v. Harris*, 351 S.C. 643, 652, 572 S.E.2d 267, 273 (2002).

At the close of the evidence, McBride argued there was no testimony of penetration of the victim's mouth. The court reporter replayed the testimony of the victim's cross-examination, and the trial court denied the motion, finding direct and circumstantial evidence. Our own review of the victim's testimony indicates the victim testified to penetration. We find no merit in this issue and affirm.

### IV. Admission of McBride's Statement

McBride argues the trial court erred in admitting his statement to Hamlet. We disagree.

Prior to trial, the court held a *Jackson v. Denno* [5] hearing to determine the admissibility of a statement McBride made to Hamlet, the investigator for the Kingstree Police Department. McBride moved to strike the initial portion of his statement. The court suppressed "that one particular statement and not anything else. . . ."

On appeal, McBride argues the circuit court erred in suppressing only a portion of the statement. This issue is not preserved for our review. *See State v. Sinclair*, 275 S.C. 608, 610, 274 S.E.2d 411, 412 (1981) (finding when "the appellant obtained the only relief he sought, this court has no issue to decide"); *State v. Parris*, 387 S.C. 460, 465, 692 S.E.2d 207, 209 (Ct. App. 2010) ("When the defendant receives the relief requested from the trial court, there is no issue for the appellate court to decide.").

## CONCLUSION

For the foregoing reasons, McBride's conviction is

**AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.

---

5. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).