**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Maurice Harris, Appellant.

Appellate Case No. 2016-000621

———————————

Appeal From Charleston County
Diane Schafer Goodstein, Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-081
Heard December 5, 2018 – Filed February 13, 2019

———————————

**AFFIRMED**

———————————

Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General Mark Reynolds Farthing, and Assistant Attorney General Vann Henry Gunter, Jr., all of Columbia, and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

———————————

**PER CURIAM:** Maurice Harris appeals his convictions for one count of third-degree criminal sexual conduct (CSC) with a minor and two counts of second-

degree CSC with a minor.  He argues the trial court erred in giving a jury instruction that a sexual assault victim's testimony need not be corroborated in order to convict and that the giving of such an instruction was not harmless error. We affirm.

**FACTS/PROCEDURAL BACKGROUND**

Harris was in an on-again, off-again relationship with Genita Brown (Mother). Mother had three children from previous relationships—Older Sister, Older Brother, and Victim, who was twelve years old at the time of the events in this case.  Harris and Mother shared two younger children, Little Sister and Little Brother.  At various times, particularly during the summer of 2013, Mother permitted all of her children to visit with Harris, who shared a home with his parents and his brother.  The children all agreed they would frequently spend time together in the den at Harris's house and watch television or movies with him.

In the fall of 2013, Little Brother got in trouble at school for acting out in a sexual manner.  The Department of Social Services (DSS) met with Little Brother and Victim, who attended the same school, and Victim told a counselor Harris had shown them a movie in which people were naked and having sex.  This turned out to be an Adam Sandler movie titled "That's My Boy."  At that time, Victim denied Harris had ever touched her inappropriately.  A few days later, Victim told her Mother that Harris had touched her and Little Sister inappropriately, and Mother called Harris, who denied any wrongdoing.  Mother called police, and charges were ultimately filed against Harris.

At trial, Victim testified Harris had put his hand up her shorts and rubbed her private area and put his fingers in her vagina.  She further testified he had her perform oral sex on him on three occasions.  Little Sister testified she had seen Harris touch Victim between her legs and had seen Harris try to put his "private part" in Victim's mouth.  Little Sister also said she thought Harris had touched her own private area because Victim told her Harris had done so while Little Sister was sleeping.  Little Sister's forensic interview was also played for the jury.[1]  In that interview, Little Sister indicated she had seen Harris touch Victim "down there" with his hand while Victim was sleeping.  Older Brother testified he had not witnessed any inappropriate conduct between Harris and his sisters but that he was

---

[1] Little Sister's recorded interview was played in court as permitted by section 17-23-175 of the South Carolina Code (2012), because Little Sister was eleven years old at the time of trial.

often outside the house talking to his girlfriend on the phone during the course of that summer.

The State also introduced an audio recording of a conversation between Harris and his Mother made when Harris was in jail for delinquent child support. The recording provided:

> Harris's Mother: Little Sister going and getting involved in that. Man [inaudible] they lying.
>
> Harris: Yeah! And I ain't even touch her!
>
> Harris's Mother: Hmm
>
> Harris: And as far umm as the other one go, she started with me. She climbing all over me. That's another thing.
>
> Harris's Mother: My Jesus.
>
> Harris: Yup! There's two stories . . . there . . . there's two tales to every story now. Two sides to every story.

Harris testified in his own defense and denied misconduct with any of the children. He was convicted and sentenced to concurrent terms of twenty years' imprisonment for the second-degree CSC charges and fifteen years' imprisonment for the third-degree CSC charge. This appeal followed.

**STANDARD OF REVIEW**

In determining whether an error is harmless, the question before the appellate court is not "whether the State proved its case beyond a reasonable doubt, but whether beyond a reasonable doubt the trial error did not contribute to the guilty verdict." *State v. Tapp*, 398 S.C. 376, 389-90, 728 S.E.2d 468, 475 (2012). Accordingly, this finding is not governed by a definite rule of law, but instead the materiality and prejudicial character of the error must be determined from its relationship to the specific case. *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). An error is harmless when it reasonably could not have affected the outcome of the trial. *Tapp*, 398 S.C. at 389, 728 S.E.2d at 475.

**LAW/ANALYSIS**

## I.      Jury Instruction

In the interim between Harris's trial and this appeal, our Supreme Court found the disputed jury instruction, drawn from section 16-3-657 of the South Carolina Code (2015), unconstitutional. *State v. Stukes*, 416 S.C. 493, 499, 787 S.E.2d 480, 483 (2016) (concluding this charge "is confusing and violative of the constitutional provision prohibiting courts from commenting to the jury on the facts of a case"). Therefore, we agree with Harris the instruction was erroneous.[2]  However, as discussed below, we conclude the error was harmless under the facts of this case.

## II.      Harmless Error

In *State v. McBride*, 416 S.C. 379, 393-94, 786 S.E.2d 435, 442 (Ct. App. 2016), *cert. denied*, S.C. Sup. Ct. Order dated June 16, 2017, this court had the opportunity to address *Stukes*'s application in a case in which other evidence corroborated the victim's testimony.  The *McBride* court observed that in *Stukes*, "The court found the error was not harmless beyond a reasonable doubt because the case 'hinged on credibility.  [The v]ictim said it was rape; [Stukes] said it was consensual.'" 416 S.C. at 394, 786 S.E.2d at 442 (second alteration by court) (quoting *Stukes*, 416 S.C. at 499, 787 S.E.2d at 483).  However, in *McBride* the court concluded:

> [A]lthough we find the jury charge was error, we find it was harmless beyond a reasonable doubt.  Unlike the situation in *Stukes*, there was corroborating evidence in this case.  The victim's mother testified she smelled men's cologne and saw the stain on the victim's shirt.  The mother's sister testified she confronted McBride and he said he did not mean to do it, and "tr[ied] to compromise with [her]."  The sister described it as McBride's confession.  Thus, although the jury was erroneously charged section 16-3-657, we find the error was harmless beyond a reasonable doubt.

---

[2] The supreme court explained the *Stukes* ruling is "effective in this case and those which are pending on direct review or are not yet final, but not in post-conviction relief."  *Stukes*, 416 S.C. at 500 n.5, 787 S.E.2d at 483 n.5.

*Id*. at 394, 786 S.E.2d at 442.

Likewise, in the present case, other evidence corroborated Harris's guilt and Victim's testimony.[3] Little Sister testified she had seen Victim try to put his private part in Victim's mouth and had seen Harris put his hand between Victim's legs. While Little Sister's testimony was not unassailable, she testified she witnessed these events between Harris and Victim which corroborates Victim's testimony.

Additionally, the recorded jailhouse phone conversation between Harris and his mother serves as corroborating evidence. Harris's own words indicated that while he had "not touch[ed]" Little Sister, Victim "had started with him" and there were two sides to the story. Harris's statements tended to strengthen and confirm Victim's testimony.

In sum, we find the giving of the erroneous instruction did not contribute to the guilty verdict in this case in light of the corroborating evidence presented. Therefore, Harris's conviction is

**AFFIRMED.**

**KONDUROS, MCDONALD, and HILL, JJ., concur.**

---

[3] "Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. Evidence is admissible to corroborate the testimony of a previous witness, and whether it in fact corroborates the witness'[s] testimony is a question for the jury." *State v. Pagan*, 369 S.C. 201, 210, 631 S.E.2d 262, 266 (2006).